1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   CHERYL ADAMS, State Bar #164194
    Chief Trial Deputy
3   RENÉE E. ROSENBLIT, State Bar #304983
    NEWTON OLDFATHER, State Bar #281227
4   Deputy City Attorney
    Fox Plaza
5   1390 Market Street, 6th Floor
    San Francisco, California 94102-5408
6   Telephone:    (415) 554-3853
    Facsimile:    (415) 554-3837
7   E-Mail:       renee.erickson@sfgov.org

8
    Attorneys for Defendants
9   CITY AND COUNTY OF SAN FRANCISCO AND
    POLICE OFFICER ANTHONY ASSERETO
10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| GLENN BERRY,<br><br>      Plaintiff,<br><br>      vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO and POLICE OFFICER ANTHONY ASSERETO,<br><br>      Defendants. | Case No. 17-CV-00056-EDL<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:   November 28, 2017<br>Time:   9:00 a.m.<br>Place:   450 Golden Gate Avenue, Courtroom E, 15th Floor. San Francisco, CA 94102<br><br>Trial Date:   May 14, 2018 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................. 1

I.     INTRODUCTION ................................................................................... 2

II.    FACTS ..................................................................................................... 2

     A.     The 911 Calls and Dispatch ........................................................ 2

     B.     The Detention and Search of Plaintiff ....................................... 3

     C.     Plaintiff's Testimony Regarding The Incident And The Force ................. 4

         1.     The Attempted Drug Purchase ........................................ 4

         2.     The Alleged Kick To The Ground ................................... 5

         3.     The Alleged Kicking On The Ground .............................. 6

         4.     The Alleged Gun To The Head ........................................ 8

III.   ARGUMENT ........................................................................................... 8

     A.     PLAINTIFF HAS NOT CHALLENGED PROBABLE CAUSE ............. 8

     B.     PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS ............................. 8

         1.     OFFICER ASSERETO USED REASONABLE FORCE TO DETAIN AN INDIVIDUAL SUSPECTED OF ASSAULT WITH A FIREARM ........................................................................ 9

             a.     The Type And Amount of Force Was Minimal ................. 9

             b.     A 911 Call Of Assault With A Deadly Weapon Is A Severe Crime ................................................ 10

             c.     Plaintiff Posed A Serious Risk To Officer and Public Safety ................................................ 11

         2.     OFFICER ASSERETO IS ENTITLED TO QUALIFIED IMMUNITY ........................................................................ 11

     C.     THE BANE ACT CLAIM FAILS ............................................................. 12

         1.     PLAINTIFF FAILS TO SHOW A CONSTITUTIONAL VIOLATION ..................................................................... 13

         2.     PLAINTIFF FAILS TO SHOW INTIMIDATION, COERCION, FORCE SEPARATE FROM THE CONSTITUTIONAL VIOLATION ..................................................................... 13

     D.     THE STATE TORT CLAIMS FAIL ....................................................... 14

         1.     THE CITY IS ENTITLED TO JUDGMENT BECAUSE OFFICER ASSERETO USED REASONABLE FORCE ............. 14

IV.   CONCLUSION ..................................................................................... 14

1

# **TABLE OF AUTHORITIES**

2

**State Cases**

*Allen v. City of Sacramento*
   234 Cal.App.4th 41 (2015) ................................................................13

3

4

*Bender v. County of Los Angeles*
   217 Cal. App. 4th 968 (2013) ..........................................................14

5

6

*Edson v. City of Anaheim*
   63 Cal.App.4th 1269 (1998) .............................................................14

7

*Shoyoye v. Cty. of L.A.*
   203 Cal.App.4th 947 (2012) .............................................................13

8

9

**State Statutes & Codes**

Cal. Civ. Code § 52.1(a) ......................................................................13

10

California Civil Code 52.1 .............................................................1, 13, 14

11

California Penal Code 835a .................................................................1, 14

12

**Federal Cases**

13

*Annan–Yartey v. Honolulu Police Dept.*
   2007 WL 2238858 (D .Haw. July 31, 2007) ....................................12

14

*Ashcroft v. al-Kidd*
   131 S.Ct. 2074 (2011).................................................................11, 12

15

16

*Barragan v. City of Eureka*
   2016 WL 4549130 (N.D. Cal. Sept. 1, 2016) ...................................13

17

18

*Brosseau v. Haugen*
   543 U.S. 194 (2004)...........................................................................11

19

*Brown v. City of Oakland*
   2006 WL 1760747 (N.D. Cal. 2006) ................................................10

20

21

*Butz v. Economou*
   438 U.S. 478 (1978).............................................................................11

22

*Chew v. Gates*
   27 F.3d 1432 (9th Cir. 1994) .............................................................10

23

24

*Fox v. Jordan*
   2008 WL 11355543 (C.D. Cal. Mar. 21, 2008)..................................9

25

26

*Franklin v. Fox*
   312 F.3d 423 (9th Cir. 2002) .............................................................11

27

28

*Garvey v. Gibbons*
  2008 WL 4500011 (C.D. Cal. 2008) ..................................................................10

*Han v. City of Los Angeles*
  2016 WL 2758241 (C.D. Cal. May 12, 2016) .......................................................13

*Hinz v. City of Everett*
  2010 WL 3212001 (W.D.Wash. Aug. 10, 2010) .....................................................9

*Hunter v. City & Cty. of San Francisco*
  2012 WL 4831634 (N.D. Cal. Oct. 10, 2012) ........................................................13

*I.A. v. City of Emeryville*
  2017 WL 952894 (N.D. Cal. Mar. 13, 2017)..........................................................13

*Jones v. Cty. of Contra Costa*
  2016 WL 1569974 (N.D. Cal. Apr. 19, 2016) ........................................................13

*Kassim Abdulkhalik v. City of San Diego*
  2009 WL 4282004 (S.D.Cal. Nov. 25, 2009) .........................................................12

*Miller v. Clark Cty.*
  340 F.3d 959 (9th Cir. 2003) ...............................................................................8

*Morgan v. City of Pleasant Hill,*
  2005 WL 3454143 (N.D.Cal. Dec.16, 2005) ...........................................................9

*Osborne v. Vancouver Police*
  2017 WL 1049479 (W.D. Wash. 2017)..................................................................10

*Pearson v. Callahan*
  555 U.S. 223 (2009)............................................................................................11

*Plumhoff v. Rickard*
  134 S. Ct. 2012 (2014)....................................................................................8, 12

*Ramirez v. City of Buena Park*
  560 F.3d 1012 (9th Cir. 2009) ............................................................................11

*Reynolds v. County of San Diego*
  84 F.3d 1162 (9th Cir.1996) ...............................................................................13

*Saman v. Robbins*
  173 F.3d 1150 (9th Cir. 1999) ..............................................................................9

*Saucier v. Katz*
  533 U.S. 194 (2001)............................................................................................11

*Sheridan v. Trickey*
  2010 WL 5812678 (D. Or. Dec. 16, 2010) ...........................................................12

*Smith v. City of Hemet*
  394 F.3d 689 (9th Cir. 2005) ...................................................................................11

*Stubblefield v. City of Novato*
  2016 WL 192539 (N.D. Cal. Jan. 15, 2016)............................................................13

*United States v. LaVallee*
  439 F.3d 670 (10th Cir. 2006) .................................................................................10

**Rules**
Federal Rule of Civil Procedure 56 ................................................................................1

# NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND TO HIS COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on November 28, 2017 at 9:00 a.m., in the United States District Court for the Northern District of California, 450 Golden Gate Ave., 15th Floor, Courtroom E, San Francisco, California, Defendants City and County of San Francisco ("the City") and Defendant San Francisco Police Officer Anthony Assereto will, and hereby do, move the Court for summary judgment under Federal Rule of Civil Procedure 56 on all claims for relief contained in the Complaint in this action.  Defendants base this motion on the following grounds:

1.      Plaintiff's excessive force claim fails as a matter of law and undisputed fact because the officers used reasonable force in light of the emergency nature of the 911 call, and because plaintiff's lack of any injury demonstrates that plaintiff's colloquial descriptions of the force are not competent evidence of excessive force.

2.      The defendant officer enjoys qualified immunity on the First Claim for Relief;

3.      The Second Claim for relief alleging a violation of California Civil Code 52.1 fails as a matter of law and undisputed fact because there was no underlying constitutional violation, and because plaintiff has not shown evidence of threats, intimidation, or coercion that is separate and apart from plaintiff's force allegations.

4.      The Third Claim for relief and the Fourth Claim for relief both fail because the force was reasonable and therefore privileged under California Penal Code 835a.

Defendants base their motion on this notice of motion and motion, the memorandum of points and authorities in support thereof, the declarations, papers and other evidence submitted herewith, and such argument as may be heard.

## I.     INTRODUCTION

On December 2, 2016, San Francisco Police Officers Assereto, Hope, Taft, and McEachern used reasonable force to detain plaintiff Glenn Berry on suspicion of assault with a firearm.  After dispatch radioed a call of an assault with a firearm and a description of the suspect, the officers raced to the scene, pointed firearms at plaintiff, forced him to the ground, and held him there while they searched for a firearm.  Though a likely unpleasant experience, plaintiff did not suffer any injury.

In today's age of gun violence, the officers acted commendably.  An emergency call of a violent suspect with a gun is a terrifying call, raising a critically important government interest.   There is no time for polite questioning or patience.  Officers must respond rapidly with overwhelming force to ensure that no one discharges a firearm on a busy city block.  Fortunately, this is exactly what these officers did.  The officers used physical control holds to immediately overwhelm plaintiff, force him to a prone position, and ensure there was no firearm.

Plaintiff's entire case rests on hyperbolic descriptions of being taken to the ground, including "kicking" and "stomping."  But no matter how plaintiff describes the force, the undisputed evidence is that he was slow to get to the ground and suffered no injury.  This lack of injury is dispositive evidence that shows the type and nature of force was minimal in relation to the overwhelming government interest.  No reasonable jury could find excessive force.  All of plaintiff's claims must fail.

## II.    FACTS

### A.     The 911 Calls and Dispatch

On December 2, 2016, two citizens called 911 to report a fight at Hyde and O'Farrell Streets.  First, a woman called 911 at approximately 12:38 p.m. and reported two African American men physically fighting in the street.  (911 Call at 1238-1239 dt04.wav [Walker Decl. at Ex. A].) The woman identified one suspect as wearing a black sweater and black pants.  (*Id.*)  She identified the other suspect as wearing light denim jeans and a navy blue blazer.  (*Id.*)

Second, at approximately 12:39 p.m., a man called 911 and reported being attacked by an African American man.  (911 Call. at 1239-1242 dt31.wav [Walker Decl. at Ex. B].)  The man reported that his assailant was "armed with a gun" and wearing "black hood, black pants," and a "black T-shirt."  (*Id.*)  Dispatch asked if the man saw a gun, and the man replied in the affirmative and

1  that the suspect "pull[ed] out the gun on me." (*Id.*)  The man stayed on the phone with 911 until police

2  arrived, and the recording captured the audio of the man identifying the suspect to the officers.  (*Id.*)

3  Dispatch began putting out the emergency information over the police radio as soon as it

4  received the 911 calls.  (Dispatch Audio Recording at 1237-1252 dt12.wav [Walker Decl. at Ex. C].)

5  Dispatch relayed to officers the following information:

> "Dispatch: 2 bmas, one is wearing a black sweater, black pants, number 2 a
> navy blue blazer and light jeans, Hyde and O'Farrell… ."

6

7  (*Id.* at 1:35-1:46.)

8  …

> "Dispatch: "They were in a physical, now it's a verbal.""

9  (*Id.* at 2:10-2:15.)

10  …

11  > "Dispatch: "Clear the air, the call at O'Farrell and Hyde, now we are getting
> that the one of the persons, one of the suspects, is a 221, and the 221 is a bma
> wearing a black hoodie, black pants, black t-shirt and he is now running on
> Ellis. He turned left on Ellis. The gun was seen … .""

12

13  (*Id.* at 3:15-3:40.)

14  **B.     The Detention and Search of Plaintiff**

15  After receiving the call of a fight from dispatch, Officer Daniel Tafts and Ryan McEachern

16  travelled to Hyde and O'Farrell streets together.  (McEachern Depo. at 17:12-18 [Oldfather Decl. Ex

17  A].)  As they approached the scene, a man, later identified as the 911 caller Morais, flagged them

18  down.  (*Id.* at 19:5-8.)  Morais directed the officers' attention to a person walking eastbound on Ellis

19  Street, and Morais identified the person as being involved and having a gun.  (*Id.* at 21:3-22:7.)

20  Officer Meachern notified dispatch that the suspect had a gun.  (*Id.* at 27:20-24.)

21  Officer Meachern and Taft approached the suspect, plaintiff, from behind, with their firearms

22  pointed at him.  (*Id.* at 33:15-25.)  When they were about 30 feet away, the officers told Berry to raise

23  his hands and get on the ground.  (*Id.* at 33:17-19, 35:3-10.)  Berry did not get on the ground.  (*Id.* at

24  35:9-14.)

25  At the same time, Officer Anthony Assereto and Micah Hope arrived and began approaching

26  Berry.  (Meachern Depo. at 38:7-10.)  Officer Assereto had heard over the radio that the suspect had a

27  gun.  (Assereto Depo. at 39:25-40:2 [Oldfather Decl. Ex. B].)  As Officer Assereto approached, he saw

28  Officer McEachern with his firearm pointed at Berry.  (*Id.* at 66:13-18.)

Officer Assereto approached plaintiff with his gun by side, pointed at the ground.  (*Id.* at 72:25-73:4.)  Officers Taft and Hope were telling plaintiff to put his hands in the air and get on the ground.  (*Id.* at 71:22-72:4.)  Plaintiff put his hands in the air but did not get on the ground.  Officer Assereto described it as "[h]e put his hands in the air.  He was instructed to lay on the ground.  He did so very slow.  He had his butt in the air and kept, like, moving like, from side to side and refused to put his – I guess, like belly button prone on the concrete.  And he was reacting very slow to, like, everything we were telling him to do."  (*Id.* at 74:23-75:4.)  Officer Hope also remembers plaintiff refusing to lay all the way onto the ground.  (Hope Depo. at 50:9-51:7 [Oldfather Decl. at Ex. C].)

Officer Assereto then used force to push plaintiff from a halfway down position to a prone position.  Officer Assereto put his left foot on plaintiff's buttocks and pushed him to a prone position, with plaintiff's stomach touching the ground.  (Assereto Depo. at 77:18-22).  The maneuver took two to three seconds.  (*Id.* at 78:15-79:7.)  Officer Assereto did not otherwise kick or stomp on plaintiff.  (*Id.* at 80:5-11, 89:25-90:7.)  Officers Taft and Hope held plaintiff on the ground while they handcuffed him.  (Hope Depo. at 50:25-51:18.)  Officer Hope had to struggle with plaintiff to force plaintiff's arms behind his back and into handcuffs.  (*Id.*)

Officers never found a gun.  Plaintiff was released from the scene.

### C.   Plaintiff's Testimony Regarding The Incident And The Force

#### 1.   The Attempted Drug Purchase

Plaintiff testified that he was sitting at a bus stop with his cousin, getting ready to smoke marijuana, when an unknown individual approached them and asked to buy marijuana.  (Plf.'s Depo. at 38:24-25, 40:7-11 [Oldfather Decl. Ex. D].)  Plaintiff refused to sell the man any marijuana, and an argument ensued.  (*Id.* at 42:24-25.)  Plaintiff testified that the man made some kind of threat.  (*Id.* at 43:10-45:7.)  Plaintiff then punched the man in the face.  (*Id.*)  The two scuffled for about 30 seconds.  (*Id.*)

About two to three minutes after the scuffle, plaintiff saw the man flagging down the police.  (*Id.* at 67:15-68:23.)  The next thing plaintiff knew, Officer Assereto approached plaintiff with his gun drawn and said "get on the ground, get on the ground, get on the fucking ground" (*id.* at 83:2-10) and suddenly police officers "came from everywhere"  (*id.* at 85:23-86:14.).

### 2.   The Alleged Kick To The Ground

Plaintiff testified that Officer Assereto kicked him to the ground.   (Plf.'s Depo. at 91:18-19) ("I got kicked to the ground.")  However, a close examination of plaintiff's testimony reveals that plaintiff is referring to Officer Assereto using his foot to push plaintiff's hips down, not being kicked from a standing position.

Plaintiff makes a couple admissions that shows he was not obeying officer's commands and he was slowly getting on the ground when he was "kicked."  Plaintiff testified that he was "getting to the ground slowly."  (*Id.* at 85:11).  Plaintiff said he put his hands up "in an angle" and started to kneel "one leg at a time."  (*Id.* at 86:23-87:18).  Plaintiff admits that it "may have looked like [he] was turning a certain way probably," but that he was "getting on the ground."  (*Id.* at 89:3-10.)  Plaintiff also admits that by the time Officer Assereto had reached him, his knees had still not touched the ground.  (*Id.* at 90:11-25.)  Plaintiff said that he was at a "kneeling point," with his knees about to touch the ground but not yet touching, when Officer Assereto kicked him down to the ground.  (*Id.* at 91:20-92:4.)  Plaintiff also admits that ten seconds had passed between Officer Assereto telling him to get on the ground and plaintiff finally being forced to the ground.  (*Id.* at 108:19-24.)

Describing the kick, plaintiff said "when I got kicked, all I remember, I felt a jolt, and before I knew it, I was on my stomach."  (*Id.* at 97:23-98:1.)   Plaintiff also described the force as fast and kind of happening all at once.  (*Id.* at 89:14-16) ("A: It happened so fast.  Like, I – you know, I really don't – from, like, once he got close to kicking me, everything just happened so fast and -- .")

Assereto's testimony is substantially the same as plaintiff's.  Assereto stated that plaintiff was slow getting to the ground, and that, while plaintiff's "chest was facing the ground," (similar to plaintiff's testimony of being at a "kneeling point"), Officer Assereto put his left foot on plaintiff's buttock area and pushed his waist to the ground.  (Assereto Depo. at 82:16-17.)

Plaintiff and Officer Assereto are both describing the same thing – a basic takedown.  Officer Assereto used his foot to force plaintiff into a prone position from a crouched or "kneeling point" position.  Even accepting plaintiff's characterization that the push was more of a kick than a push, the difference is immaterial in light of the fact that the force did not cause any injury, the crime was severe, and both descriptions – a push or a kick – show force motivated by the legitimate lawful

purpose of forcing plaintiff into a prone position after he failed to get on the ground despite multiple commands and despite that ten seconds had passed.

### 3. The Alleged Kicking On The Ground

Plaintiff also alleges that someone repeatedly "kicked" him while he was on the ground.  (Plf.'s Depo at 96:19-97:2) ("And then I remember just being spread out, my whole body just being spread out.  And the next thing you know, I'm still getting kicked, like, repeatedly, over and over.")  Again, a close examination of plaintiff's testimony demonstrates that plaintiff's "kicks" were likely some minor, incidental touching as a result of holding plaintiff on the ground.

Plaintiff's description of the kicks is vague.  Plaintiff said he was kicked "several times" in his "lower back."  (*Id.* at 109:19-24.)  When asked to be specific about where he was kicked, plaintiff said, "I mean, wherever the space was open, where he had space to kick me at, that's where he was kicking me.  So, yeah, within this area all up in the left – like left side, whatever."  (*Id.* at 110:12-16.)  When asked to clarify again, plaintiff said, "middle, lower back; everything."  (*Id.* at 110:17-18.)  When asked how many times he was kicked, plaintiff could not give a number.  (*Id.* at 112:6-19.)  Rather, plaintiff said the kicks were "simultaneous kicks," and that they were coming "from above," like a "stomp out, riding me out now."  (*Id.* at 112:23-113:3.)

Plaintiff never described the kicking as the kind of kick one sees in a football game or soccer match.   Rather, plaintiff's description focuses oddly on the foot.  (*Id.* at 111:24-112:5) ("I'm still getting that same foot.  I kept feeling the same person kicking me.  Like, I knew I had – he was the only one kicking me.  There was only one foot I felt kicking me over and over. … .")

These vague descriptions of force are not competent evidence of "kicking" that warrants a jury inquiry.  Plaintiff admits that officers were surrounding him, holding him on the ground, and that an officer had a knee in his back.  If anything, plaintiff likely felt the foot of the officer who was using his knee to exert pressure on plaintiff's upper back.  (*Id.* at 102:21-103:2 ("[I] got a knee in my back   "); 110:19-23 ("somebody is holding me on my right side with a knee in my back.").)  This would explain why plaintiff could not state where he was kicked; it would also explain plaintiff's description of a "stomp out," "riding me out;" and it would explain why these alleged "kicks" didn't cause any injury.

1   Notably, plaintiff admits that he did not actually see Officer Assereto "kicking" him.  (*Id.* at 113:14-

2   15.)

3          Finally, most importantly, these "kicks" did not cause any injury at all.  Plaintiff admits that he

4   did not even suffer bruising:

5          Q: What part or parts of your body were injured as a result of this incident?
          A: My lower-back area.
6          Q: Any other part of your body?
          A: No.
7          Q: Legs?
          A: No.
8          Q: Feet?
          A: No.
9          Q: Arms?
          A: No.
10         Q: Hands?
          A: No.
11         Q: Pelvis?
          A: No.
12         Q: Head?
          A: No.
13         Q: Neck?
          A: No.
14         Q: Just your lower back; right?
          A: Just my lower back area.
15         Q: Not your upper back?

16         A: No.
          Q: Okay.  And what kind of injury did you have to your lower back?
17         A: I guess probably, like, I don't know.  Bruising or something. Bruising.
          Q: Did you have a bruise?
18         A: I didn't see.  They said they didn't see any bruises.
          Q: Who is "they?"
19         A: I'm guessing the ambulance people, the doctors.  You couldn't see my
          bruises.  I don't think they could see.  I felt – I still felt pain.
20         Q: I understand you felt pain, but you couldn't see any bruises?
          A: I couldn't.
21         Q: You couldn't.  And the doctor said they couldn't see bruises?
          A: I don't think so.  I didn't see the report, but I don't think they did see any
22         bruises."

23         (Plf.'s Depo at 164:9-165:24.)

24         Plaintiff also said he did not feel any pain until later in the day, after he had walked a "good

25   distance."  (*Id.* at 166:15-16) ("Q: So when did you first feel pain in your lower back? A: Once I

26   started walking a good distance from the job, making my way to 20 Jones.")

27   / / /

28   / / /

### 4.   The Alleged Gun To The Head

Plaintiff also alleged that an officer put a gun to his head and threatened to kill him if he did not stop moving.  (Plf.'s Depo. at 115:22-24) ("I felt something like a gun or something behind my head – behind the neck/head area. That's all I remember feeling.")  When asked if plaintiff could tell what the object was, plaintiff responded that he only knew it was an object.  (*Id.* at 116:4-13) ("It was definitely a barrel.  It wasn't a finger, because you can poke somebody with a finger.  You can feel that.  No, this is not a finger.  This thing was solid.  I could feel something solid, and I couldn't directly tell, but I knew it was an object.  It wasn't a person's limbs or fingers or fist.  No, this was something you use, a tool.")  In the end, this allegation is immaterial because even if plaintiff could establish that the object was a gun, plaintiff admits that he does not know who said the statement.  (*Id.* at 197:21-25 ("Q: But you don't know what officer did that? A: No.  But I'm claiming it had to be Officer Assereto.  … I just felt everything come from him."); 197:7-10 ("Q: Did you see that officer? A: I couldn't really see, but I listened to the voice.  It may have been him, but I'm not for certain because, like I said, I'm looking at a gate.").)

### III.   ARGUMENT

#### A.   PLAINTIFF HAS NOT CHALLENGED PROBABLE CAUSE

Plaintiff has not challenged the officer's probable cause to detain and arrest plaintiff.  There is no false arrest claim.

#### B.   PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS

A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's "reasonableness" standard.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014).  The Ninth Circuit has created a three step analytical framework to evaluate reasonableness.  *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003).  First, "we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted."  *Id.*  Second, "we assess the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by

flight." *Id.*  Third, "we balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable.  *Id.*

### 1.   OFFICER ASSERETO USED REASONABLE FORCE TO DETAIN AN INDIVIDUAL SUSPECTED OF ASSAULT WITH A FIREARM

#### a.   The Type And Amount of Force Was Minimal

Police officers pointed their firearms at plaintiff, forced him to the ground, and held him down to secure him.  All of these actions are entirely reasonable ways of responding to an unknown, armed assailant, especially when, as plaintiff admits, the suspect did not immediately obey the officer's commands to get on the ground.  *See e.g., Saman v. Robbins,* 173 F.3d 1150, 1157 (9th Cir. 1999) (holding that forcing a potentially armed suspect to the ground and a single kick were reasonable efforts to incapacitate him.); *Morgan v. City of Pleasant Hill,* No. C–04–04865–CRB, 2005 WL 3454143 (N.D.Cal. Dec.16, 2005) (holding officers' drawing and pointing of firearms at suspects not excessive force where officers believed plaintiff "was in the midst of committing a serious felony" at night and a reasonable officer would believe one committing such crime at night "could very well be armed"): *Hinz v. City of Everett*, No. C10–0347–JCC, 2010 WL 3212001 (W.D.Wash. Aug. 10, 2010) (finding no excessive force when an officer investigating an assault pulled his gun on a suspect sitting in a lawn chair because the officer had a reasonable suspicion that the suspect was armed and was unable to see whether the suspect had a weapon within reach); *Fox v. Jordan,* No. CV 04-3073-ODW(CW), 2008 WL 11355543, at *6 (C.D. Cal. Mar. 21, 2008) (finding reasonable that officers jumped on suspect, forcibly held him down, twisted his arms to handcuff him, and "jumped on his lower right leg" because there was no injury.)

In sum, officers are entitled to take measures to protect themselves. These officers did not use batons, pepper spray, or any tool other than basic takedown maneuvers that did not cause injury.

Although plaintiff claims there was "kicking" and "stomping," these descriptions do not create a dispute of material fact.  As described above in section II.C.3., plaintiff is not describing a series of events that officers deny occurred.  Rather, plaintiff is describing the same events but describing them with hyperbole, changing every touching to a kick or stomp.

1    Plaintiff's lack of injury demonstrates why the Court should reject plaintiff's hyperbolic and

2    conclusory descriptions of "kicking" or "stomping."  Although injury is not a requirement for an

3    excessive force claim, the degree of injury is "highly relevant to the determination of the

4    unreasonableness of the force used."  *See United States v. LaVallee*, 439 F.3d 670, 688 (10th Cir.

5    2006)(noting that "the degree of injury may be highly relevant to the determination of the

6    unreasonableness of the force used."); *see also Osborne v. Vancouver Police*, 2017 WL 1049479 at *7

7    (W.D. Wash. 2017) (rejecting plaintiff's claim that he was kneed in the stomach and thrown on the

8    ground because he could not show the requisite injury); *Brown v. City of Oakland*, 2006 WL 1760747,

9    at *6 (N.D. Cal. 2006) (the "severity of the plaintiff's injury" can be "evidence of minimal use of

10   force"); *Garvey v. Gibbons*, 2008 WL 4500011, at *11 (C.D. Cal. 2008) (finding that minor soreness

11   and bruising shows the force was not excessive).

12       Plaintiff had no injuries from the force.  Plaintiff said he was sore, but admitted there was no

13   bruising.  Plaintiff also admitted that he did not feel pain until sometime after the incident, after he got

14   up and walked around.  This lack of injury proves that what plaintiff calls a kick was really a push, and

15   what he calls a stomp is a step, or just pressure.  Had the force occurred as plaintiff describes – being

16   kicked more than five times while he lay on the ground defenseless – plaintiff would have had broken

17   bones or, at the very least, significant hemorrhaging.  This Court need not credit testimony that

18   requires the suspension of science.

19       **b.    A 911 Call Of Assault With A Deadly Weapon Is A Severe Crime**

20       The Ninth Circuit has indicated that the most important factor to determine the "severity" of a

21   crime is whether it involves violence or an armed suspect.  *Chew v. Gates*, 27 F.3d 1432, 1441 (9th

22   Cir. 1994).

23       In the case before the Court, the officers received information from dispatch that plaintiff was

24   armed and attacked someone.  This is a severe crime that greatly affects public safety.  The

25   government interest in apprehending plaintiff quickly and without further conflict weighs heavily in

26   favor of the defendants.

27

28

c.       **Plaintiff Posed A Serious Risk To Officer and Public Safety**

Safety of officers and others is one of the most important factors to consider when evaluating a use of force.  *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005).

Obviously, a call of an armed assailant on a City street poses a great risk of harm to the officers and civilians nearby.  Upon approaching an armed suspect, police officers in uniform immediately become targets.  In addition, if officers do not move quickly, a resulting shootout on a City street can easily mean bullets hitting civilians.  A call of an assailant with a gun poses a very grave safety risk and weighs heavily in favor of the defendants.

**2.       OFFICER ASSERETO IS ENTITLED TO QUALIFIED IMMUNITY**

An officer is entitled to qualified immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2081 (2011); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The purpose of qualified immunity is to ensure that officers, before they are held liable for constitutional violations, have "fair notice that [their] conduct was unlawful." *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Even when an officer makes a reasonable mistake about either the state of the law or the facts, a Court should grant qualified immunity.  *Butz v. Economou*, 438 U.S. 478, 507 (1978); *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077-78 (9th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

Ninth Circuit district courts traditionally evaluate a defendant's qualified immunity defense using a two-step inquiry based on *Saucier*.  See *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).  Although *Saucier's* two-step inquiry is no longer "an inflexible requirement," generally, under the first step of *Saucier*, the issue is whether on the undisputed facts, the officers violated a constitutional right.  *Pearson*, 555 U.S. at 231.  Under the second step of *Saucier*, the issue is whether that right was "clearly established" in the specific factual context confronting the Officers. *Saucier*, 533 U.S. at 202.  Thus, even if any of the individual Defendants violated federal law, the Court must consider whether the law was clearly established as it applied to their situation.  "If an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002) (citing *Saucier*).

In the context of excessive force, it is error to construe the right simply as the right to be free from excessive force. *Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2087 (2011) ("We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."); *see also City & Cnty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1776 (2015) ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.")  Plaintiff must prove that clearly established federal law placed the specific situation confronted by the official "beyond debate," and that any reasonable official in the defendant's shoes would have understood he was violating the Constitution.  *Plumhoff v. Rickard,* 134 S.Ct. 2012, 2023 (2012).

In short, plaintiff cannot show a clear rule that it was unconstitutional for Officer Assereto to use a takedown maneuver on a person he suspects is armed and who is not getting on the ground, and that takedown maneuver causes no injury whatsoever.  Indeed, case law in this Circuit has held exactly the opposite. *Kassim Abdulkhalik v. City of San Diego*, No. 08CV1515–MMA (NLS), 2009 WL 4282004, at *7 (S.D.Cal. Nov. 25, 2009) (takedown maneuver accomplished through a headlock in and off itself not excessive force as a matter of law); *Annan–Yartey v. Honolulu Police Dept.,* No. CV 06–00166 DAE–BMK, 2007 WL 2238858, at *4–5 (D .Haw. July 31, 2007) (granting summary judgment in favor of the officer who effectuated a takedown—no serious injuries resulted from the maneuver); *Sheridan v. Trickey*, No. CIV. 10-06034-AC, 2010 WL 5812678, at *9 (D. Or. Dec. 16, 2010) ("[A] reasonable officer, in a situation where an arrestee is resisting arrest and/or creating an immediate threat, would believe that the decision to execute a controlled takedown maneuver is lawful.")

Even if the Court credits plaintiff's hyperbole of "kicks" and "stomps," the fact that he was not injured entitles Officer Assereto to qualified immunity.

## C.    THE BANE ACT CLAIM FAILS

California's Bane Act provides a private right of action against a person or persons who interfere by "threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this

state[.]"  Cal. Civ. Code § 52.1(a).  "There are two distinct elements for a section 52.1 cause of action. A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion."  *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 67 2015.   In other words, "[a] defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Shoyoye v. Cty. of L.A.*, 203 Cal.App.4th 947, 956 (2012).

Whether excessive force alone can support both prongs of a Bane Act Claim is an open question.  Defendants acknowledge that the majority of courts in the Northern District of California have held that it can, *Barragan v. City of Eureka*, 2016 WL 4549130, at *8 (N.D. Cal. Sept. 1, 2016) *Stubblefield v. City of Novato*, 2016 WL 192539, at *11 (N.D. Cal. Jan. 15, 2016)); *see I.A. v. City of Emeryville*, 2017 WL 952894, at *11 (N.D. Cal. Mar. 13, 2017); *Jones v. Cty. of Contra Costa*, 2016 WL 1569974, at *6 (N.D. Cal. Apr. 19, 2016), but because the Ninth Circuit and California Supreme Court have not yet ruled on the issue, defendants wish to preserve the argument that it cannot.

### 1. PLAINTIFF FAILS TO SHOW A CONSTITUTIONAL VIOLATION

As described above, the officers used reasonable force, which means the Bane Act claim fails because there is no underlying constitutional violation.  *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir.1996) ("Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations.")

### 2. PLAINTIFF FAILS TO SHOW INTIMIDATION, COERCION, FORCE SEPARATE FROM THE CONSTITUTIONAL VIOLATION

California Code of Civil Procedure 52.1 has two, distinct, separate elements.  Defendants agree with a federal district court in the central district that held the "Bane Act required additional coercion" that goes "beyond the allegations of [a plaintiff's] § 1983 violations."  *Han v. City of Los Angeles,* 2016 WL 2758241, *1 (C.D. Cal. May 12, 2016); *see also Hunter v. City & Cty. of San Francisco,* No. 11-4911 JSC, 2012 WL 4831634, at *6 (N.D. Cal. Oct. 10, 2012) (granting judgment on 52.1 because taunting during allegedly excessive force was not enough to support the Bane Act). A two part framework is best in keeping with the California Court of Appeal's analysis in *Bender v. County of*

*Los Angeles,* 217 Cal. App. 4th 968 (2013), in which the court went out of its way to explain that the Bane Act requires a "showing of coercion independent from the coercion inherent in the wrongful detention."   Defendants do not believe that the California Legislature passed 52.1 with an intention to create a new state cause of action for excessive force that omitted qualified immunity.

In this case, because plaintiff does not allege that Officer Assereto used intimidation, coercion, or force separate and apart from the force inherent in his excessive force claim, the 52.1 claim automatically fails.

### D.     THE STATE TORT CLAIMS FAIL

#### 1.     THE CITY IS ENTITLED TO JUDGMENT BECAUSE OFFICER ASSERETO USED REASONABLE FORCE

California Penal Code 835a privileges officers to use reasonable force.  Pen. Code § 835a. Plaintiff's negligence claim fails because the officers used reasonable force, and plaintiff's intentional infliction of emotional distress claim fails because the officers used reasonable force and their conduct was not extreme or outrageous.  *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272–73 (Cal.Ct.App. 1998) (no state tort liability for reasonable force).

## IV.     CONCLUSION

An armed assailant presents a very difficult situation.  The officers had every right to take plaintiff to the ground, pin him there, and handcuff him while they searched for a weapon.  That plaintiff suffered no injury proves that these officers acted commendably and well within their Constitutional authority.

Dated:  October 24, 2017

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
RENÉE E. ROSENBLIT
NEWTON OLDFATHER
Deputy City Attorneys

By:____*/s/ Newton Oldfather*_____
NEWTON OLDFATHER
Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO AND
POLICE OFFICER ANTHONY ASSERETO