1　David L. Fiol (SBN 203546)
　　BRENT & FIOL, LLP
2　1000 Fourth Street, Suite 750
　　San Rafael, CA  94901
3　Telephone:　(415) 839-8370
　　Email:  @bfplawyers.com
4　*Attorneys for Plaintiff*

5

6

7

8　UNITED STATES DISTRICT COURT

9　NORTHERN DISTRICT OF CALIFORNIA

10

11　GLENN BERRY,　　　　　　　　　) Case No. 17-CV-00056-EDL
　　　　　　　　　　　　　　　　　　)
12　　　　　　Plaintiff,　　　　　　) **DECLARATION OF DAVID L. FIOL IN**
　　　　　　　　　　　　　　　　　　) **SUPPORT PLAINTIFF'S MOTION *IN***
13　　　　　vs.　　　　　　　　　　　) ***LIMINE* RE: ADMISSIBILITY OF**
　　　　　　　　　　　　　　　　　　) **COMMUNITY HOUSING PARTNERSHIP**
14　CITY   AND   COUNTY   OF   SAN　) **CRITICAL INCIDENT REPORT**
　　FRANCISCO, et al.,　　　　　　　)
15　　　　　　　　　　　　　　　　　) Date:　　　May 22, 2018
　　　　　　Defendants.　　　　　　 ) Time:　　　9:00 am
16　　　　　　　　　　　　　　　　　) Location:　450 Golden Gate Avenue
　　　　　　　　　　　　　　　　　　)　　　　　　15th Floor, Courtroom E
17　　　　　　　　　　　　　　　　　)
　　──────────────────────────────) Trial Date:  July 9, 2018
18

19　　　　I, DAVID L. FIOL, declare as follows:

20　　　1.　I am an attorney at law licensed to practice in all Courts of the State of California, and a partner

21　at Brent & Fiol, LLP, counsel of record for plaintiff Glenn Berry.

22　　　2.　A true and correct copy of cited pages from the transcript of the deposition of Glenn Berry are

23　attached hereto as Exhibit 1.

24　　　3.　In the course of this litigation the defendants issued a subpoena to the Community Housing

25　Partnership for any and all employment records in its files pertaining to Glenn Berry.　A true and

26　correct copy of the subpoena, the declaration of the records custodian, and three Critical Incident

27　Reports produced by the CHP are attached hereto as Exhibit 2.

28　　　4.　A true and correct copy of cited pages from the transcript of the deposition of Juana Nunley are

1

1   attached hereto as Exhibit 3.

2         I declare under penalty of perjury that the foregoing is true and correct and that I would be

3   competent to testify to the facts in this declaration if called upon to do so.

4         Executed this 24t[h] day of April, 2018, at San Rafael, California.

5

6

7

8                   _____

9                   David L. Fiol

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION IN SUPPORT PLAINTIFF'S MOTION IN LIMINE RE: ADMISSIBILITY      Case No.
OF COMMUNITY HOUSING PARTNERSHIP CRITICAL INCIDENT REPORT      17-CV-00056-EDL

EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GLENN BERRY,

Plaintiff,

vs.                              CASE NO. 17-CV-00056-EDL

CITY AND COUNTY OF SAN
FRANCISCO and POLICE OFFICER
ANTHONY ASSERETO,

Defendants.
_____/


VIDEOTAPED DEPOSITION OF
GLENN BERRY
July 18, 2017


Reported by:  HANNAH KAUFMAN & ASSOCIATES, INC.
JESSICA AYRES  Certified Shorthand Reporters
CSR# 14180     150 Executive Park Blvd., Suite 4600
San Francisco, California 94134-3333
(415) 337-2077

Hannah Kaufman & Associates, Inc.

1                          I N D E X

2

3    DEPOSITION OF GLENN BERRY

4

5                                              P A G E

6    Examination by Ms. Erickson                    5

7

8

9

10                    E X H I B I T S

11

12                    D E S C R I P T I O N        P A G E

13    Exhibit A      Google Map image              71

14    Exhibit B      Colored photograph            162

15    Exhibit C      Document titled Claim Against  204

16                   City and County of

17                   San Francisco

18    Exhibit D      Document titled Office of      206

19                   Citizen Complaints

20    Exhibit E      Document dated                 214

21                   January 19, 2017

22    Exhibit F      Amended Notice of Taking Video 217

23                   Deposition

24    Exhibit G      Complaint for Damages          227

25    Exhibit H      Google Map image               234

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

1           BE IT REMEMBERED that, pursuant to Notice of

2     Taking Deposition, and on Tuesday, the 18th day of

3     July, 2017, commencing at the hour of 12:18 p.m.

4     thereof, at the offices of SAN FRANCISCO CITY ATTORNEY'S

5     OFFICE, 1390 Market Street, 7th Floor, San Francisco,

6     California, before me JESSICA AYRES, a Certified

7     Shorthand Reporter in the State of California,

8     personally appeared,

9                         GLENN BERRY,

10    called as a witness herein; and the said witness, being

11    by me first duly sworn, was thereupon examined and

12    testified as is hereinafter set forth.

13                         - - -

14                  APPEARANCES:

15          The Law Offices of BRENT, FIOL & PRATT LLP, 1000

16    FOURTH STREET, SUITE 750, SAN RAFAEL, CALIFORNIA 94901,

17    represented by DAVID L. FIOL, Attorney at Law, appeared

18    on behalf of the Plaintiff.

19

20          The Law Offices of SAN FRANCISCO CITY ATTORNEY'S

21    OFFICE, 1390 MARKET STREET, 6TH FLOOR, SAN FRANCISCO,

22    CALIFORNIA 94102-5408, represented by RENEE L. ERICKSON,

23    Deputy City Attorney, appeared on behalf of the

24    Defendants.

25    ALSO PRESENT:  ANDREW GRAVES, Videographer

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

```
 1                      -oOo-
 2    THE VIDEOGRAPHER:  Good afternoon.  We are on the video
 3    record on July 18th, 2017.  The time is 12:18 p.m.  I am
 4     Andrew Graves representing Alternative Media Group in
 5      San Francisco, California.  This is the beginning of        12:19:01
 6    Disc Number 1 for the deposition of Glenn Berry, Jr. in
 7       the matter of Glenn Berry, Jr. versus the City and
 8       County of San Francisco and Police Officer Anthony
 9     Assereto being heard before the United States District
10    Court, Northern District of California.  Case number is      12:19:21
11    17-CV-00056-EDL.  We are located today at 1390 Market
12    Street, 7th Floor, San Francisco, California.  Counsel,
13     would you please identify yourselves and your clients.
14        MR. FIOL:  David Fiol for plaintiff, Glenn
15    Berry.                                                        12:19:43
16        MS. ERICKSON:  Renee Erickson for the
17    defendants.
18        THE VIDEOGRAPHER:  Thank you.  The court
19    reporter today is Jessica Ayres, and she may now swear
20    in the witness.
21                      -oOo-
22                 Glenn Berry,
23       sworn as a witness by the Certified
24       Shorthand Reporter, testified as follows:
25                      -oOo-
```

Hannah Kaufman & Associates, Inc.

```
 1              VIDEOTAPED EXAMINATION
 2   BY MS. ERICKSON:
 3        Q    Good afternoon, Mr. Berry.
 4        A    How are you doing?
 5        Q    Good.  Thank you.  I introduced myself off the        12:20:05
 6   record, but again, my name is Renee Erickson, and I
 7   represent the defendants in this case.
 8        A    Okay.
 9        Q    Will you please state your name for the record?
10        A    Glenn Berry, Jr.                                      12:20:16
11        Q    And is that, G-L-E-N-N?
12        A    Correct.
13        Q    And what is your date of birth?
14        A    July the 6th, 1980.
15        Q    And are you married?                                  12:20:26
16        A    No.
17        Q    Have you been married before?
18        A    No.
19        Q    Are you right- or left-handed?
20        A    Right-handed.                                         12:20:33
21        Q    And how are you feeling today?
22        A    Feeling good.
23        Q    Are you in any pain?
24        A    No.
25        Q    Are you on any medication that would prevent          12:20:41
```

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

```
 1     Q    And how many hours do you work?

 2     A    32.

 3     Q    32 hours a week?

 4     A    Uh-huh.

 5     Q    So is that eight hours a day?          12:30:00

 6     A    Yes, it is.

 7     Q    And how long have you worked in this position?

 8     A    Since November.

 9     Q    So that's November of 2016?

10     A    Yes.                                   12:30:13

11     Q    And who is your current supervisor?

12     A    Steve Dong.

13     Q    Is your official title "corridor worker"?

14     A    Correct.

15     Q    And since November of 2016, have you had that   12:30:31

16   title, corridor worker?

17     A    That's correct.

18     Q    Before November of 2016, where were you

19   working?

20     A    Before I was working in 2016, I was working for   12:30:39

21   Community Housing Partnership.

22     Q    And what was your position with Community

23   Housing Partnership?

24     A    I was a janitor, on-call janitor.

25     Q    When did you begin working with CHP?    12:30:54
```

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

1    during both of my -- during my shifts.  So I would do

2    four hours at -- at the Iroquois, and I would do four

3    hours at the Essex.

4        Q    And then one day a week you would be at 5th

5    Street?                                                    12:36:47

6        A    That's correct.

7        Q    And that was as a full-time employee; right?

8        A    Yeah, that was a full-time schedule I had.

9        Q    When you were an on-call, did you have

10   particular buildings you were assigned to?                 12:36:56

11       A    Me being an on-call janitor, my schedule was

12   always open because I'm only promised 19 hours a week.

13   And so if somebody called in sick or they asked me could

14   I fill in for somebody, you know, I always accepted

15   because I'm not making enough hours already.  And so      12:37:13

16   they would always ask, "Do you want to work some more

17   hours for another building, cover somebody's shift?"

18   And so a lot of times that's how I would get a lot of

19   hours in.

20       Q    I see.  Is the Senator Hotel one of CHP's         12:37:24

21   buildings?

22       A    Yes.

23       Q    And did you sometimes work there?

24       A    Yep.  I was actually working the Senator Hotel

25   -- I was covering somebody's shift for that month          12:37:34

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

 1    because they went on vacation.

 2        Q    For that month are you talking about --

 3        A    For that month.

 4        Q    -- February 2016?

 5        A    Yes.                                          12:37:43

 6        Q    Okay.  Again, I'm going to remind you, we both

 7    have to work at not talking over each other.

 8        A    Sorry.

 9        Q    It's not normal.

10        A    I'm a little nervous.  A little antsy.  Sorry.   12:37:48

11        Q    That's understandable.  It's also -- normal

12    conversation we interrupt each other, but unfortunately,

13    you know, this is a different situation.

14        A    Right.

15        Q    Okay.  So I believe you were saying that        12:37:59

16    February of 2016 you were covering someone's shift at

17    the Senator Hotel for the entire month?

18        A    Right.

19        Q    And during the month, that entire month of

20    February 2016, were you only at the Senator Hotel?       12:38:14

21        A    No.  I had my other buildings to cover as well.

22    So I would be at the Senator for so many days out of the

23    week and then they would split my schedule up with other

24    buildings still.  So I would be at the Senator for so

25    many hours, like, half my shift, and then I would go to   12:38:35

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

1    another building.  Or sometimes they would just tell me,

2    "Just stay at the Senator for the whole day because we

3    need you there all day."  And I would go do my other

4    buildings the next day, the following day.

5        Q    I understand.  What is the address of the          12:38:47

6    Senator?

7        A    I forgot.

8        Q    Is it on Ellis Street?

9        A    It's on Ellis Street.

10       Q    The 500 block?                                      12:38:54

11       A    I believe so.

12       Q    What is the main office of Community Housing

13    Project, the address?

14       A    I remember it was on 20 Jones, on the 2nd

15    floor.                                                      12:39:08

16       Q    Is that just the corporate office?

17       A    That's the main building.

18       Q    So you wouldn't actually do any janitorial

19    duties at 20 Jones Street?

20       A    Never.                                              12:39:19

21       Q    Are all of CHP's buildings in the Tenderloin

22    area?

23       A    No.  Not all of them.  The 5th Street building

24    was actually in the South of Market neighborhood.  The

25    Senator is on Ellis, the Iroquois is on O'Farrell, and     12:39:36

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

```
 1            So after this exchange, you said you walked
 2     off; correct?
 3          A    Right.
 4          Q    And which direction did you walk?
 5          A    I walked south, Hyde Street, going back to      13:56:12
 6     Ellis.  Went back to Ellis.  Now I'm on Ellis going east
 7     back to the Senator.
 8          Q    Okay.  Was your cousin with you when you
 9     walked?
10          A    I didn't see which direction he went.  We      13:56:32
11     split.  We went separate directions after the scuffle.
12     He went one way, I went the other.
13          Q    Was he working at the Senator that day?
14          A    He working at a whole 'nother building.
15          Q    Okay.  All right.  So then you took Ellis east  13:56:45
16     back to the Senator.  Did you get all the way back to
17     the Senator Hotel?
18          A    Just about.
19          Q    Just how far away were you?
20          A    At least within, like, three to five feet away  13:56:55
21     from the building.
22          Q    And did you see where Morais went after the
23     scuffle?
24          A    I did see him.  Now that I think about it, I
25     did see him.  And when I seen him, I was in front of the  13:57:16
```

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

1    building, and I just remember hearing police.  I

2    remember seeing him flagging the police down.  That's

3    the only thing I remember from that point from right

4    there.

5        Q    Okay.  So when you say "in front of the          13:57:32

6    building," you are talking about in front of the

7    Senator?

8        A    Yeah.

9        Q    So you're standing three to five feet from the

10   Senator, and you notice Morais flagging down a police     13:57:43

11   officer?

12       A    Excuse me.  Yes.

13       Q    And where was Morais when he was flagging down

14   a police officer?

15       A    On the other end of the block.                   13:57:52

16       Q    Other end of Ellis?

17       A    Yes.

18       Q    So that would be Ellis and what cross street?

19       A    Hyde.

20       Q    Ellis and Hyde?                                  13:58:00

21       A    Because I was going toward Leavenworth.  My

22   building is, like, one building away from the corner.

23   So by the time I got to the building, I was standing

24   next to my co-worker.

25       Q    Okay.  So --                                     13:58:12

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

1      A    Another co-worker.

2      Q    -- between the bus stop and walking back almost

3   to the Senator, did you see Morais at any point during

4   that walk?

5      A    No.  I never looked back.  I just kept walking.                    13:58:21

6   I just kept moving.

7      Q    So you don't know if he was behind you or still

8   at the bus stop?

9      A    Uh-uh.

10     Q    Okay.                                                              13:58:30

11     A    I just kept moving.  I'm not about to stick

12   around and wait for nothing.

13     Q    You don't know where he was.

14     A    Exactly.

15     Q    And the first time you see him after the                          13:58:36

16   scuffle was when you were standing near the Senator, and

17   you saw him flagging down an officer?

18     A    Yes.

19     Q    Did you ever see him call 9-1-1?

20     A    Nope.                                                              13:58:47

21     Q    Did you ever hear him call 9-1-1?

22     A    I just remember seeing him flagging down the

23   police.

24     Q    Do you know if he -- what do you mean when you

25   say he "flagged down the police"?                                        13:58:58

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

```
 1        A    I guess there was a police car was coming our
 2   direction, coming my direction from Ellis or Hyde.  It
 3   just happened -- he just happened to be coming right
 4   there.  By the time I look, I just see a car right
 5   there, a police car stop.  I could just see him like,       13:59:16
 6   "Hey."
 7        Q    Okay.
 8        A    I couldn't hear what he was saying because he
 9   was too far away.
10        Q    So the record is clear, you saw him kind of       13:59:24
11   waiving his hands and maybe yelling at the police car --
12        A    Yeah.
13        Q    -- to stop?
14        A    Yeah.
15        Q    But you couldn't actually hear what he was        13:59:33
16   telling the police officers?
17        A    No.
18        Q    And how many minutes was this after the
19   scuffle?
20        A    Another minute.                                   13:59:44
21        Q    In other words, how long did it take you to
22   walk back, basically?
23        A    Two minutes.
24        Q    Okay.
25        A    Because I'm only one block away around the        13:59:54
```

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

1    corner from where I was at.

2        Q    So you walked directly back?

3        A    Uh-huh.  Yes, ma'am.

4        Q    All right.  And when you were standing, you

5    said three to five feet from the Senator --                14:00:07

6        A    Uh-huh.

7        Q    -- was anyone else out there?  Any other

8    persons?

9        A    I remember seeing my -- the desk clerk, the

10   front desk clerk.                                          14:00:17

11       Q    Is that Xasha?

12       A    Yes.

13       Q    She spells it with an "X"; is that right?

14       A    Uh-huh.  Yes, ma'am.

15       Q    Okay.  And did you know Xasha?                    14:00:26

16       A    Yes.  She was my co-worker.

17       Q    Was anyone else out there?

18       A    I just remember I was talking to Xasha.  I

19   don't recall seeing any other staff members until the

20   commotion -- after the commotion.                          14:00:46

21       Q    After the fight with Morais, did you call the

22   police?

23       A    Nope.

24       Q    Did you call 9-1-1?

25       A    Nope.                                             14:00:59

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

1    person I made contact with, and I told her -- I said,

2    "Xasha, I think the police about to come get me."  She's

3    like, "Why?  What happened?"  I said, "I just got into

4    it.  Just got into it with some guy around the corner."

5         And I was like -- and I looked, and I said,                    15:14:42

6    "There he is."  I just looked, and I was like, "There he

7    is, right there."  And that's when I seen him flagging

8    the officers down.  Xasha was right next to me, and I

9    could see him flagging me down.  I was just like -- I

10   just started shaking my head, like, I know they're               15:14:56

11   coming for me.

12        Q    Uh-huh.

13        A    So I'm not about to resist or nothing.  Like,

14   just -- just wait, you know.  I'm not going to run.

15   What do I run for?  Now I'm looking guilty, like I did        15:15:08

16   something wrong.  I felt I didn't do nothing wrong.  I

17   was the one threatened at the end of the day.

18        Q    Do you know if Xasha witnessed the entire

19   incident with the police?

20        A    Yeah.                                                            15:15:21

21        Q    She did.  Okay.  Did you talk to her about it

22   after?

23        A    I mean, yeah, I did.

24        Q    What did you say to her?

25        A    Basically, like she seen -- she was like what      15:15:29

Videotaped Deposition of Glenn Berry

127

Hannah Kaufman & Associates, Inc.

1    happened.  I asked her what happened.  She was just

2    like, "I don't know.  Just, like, they just kept kicking

3    you.  You getting on the ground, and they just kept

4    kicking you.  Like, you was going to the ground, but I

5    don't know why he kicked you.  Like I don't know why       15:15:45

6    they was kicking you like that, that many times.  Didn't

7    make no sense.  You were already on the ground already."

8        Q    That's what she said?

9        A    Yeah.  I believe so, yeah.

10       Q    What did you say?                                  15:15:55

11       A    I had nothing to say.  I was speechless after

12   that.  I was just like, Man, I can't believe that just

13   happened.  That's only thing I said, "Man, I can't

14   believe I just got beat up by the police.

15       Q    So when was this conversation with Xasha?          15:16:07

16       A    After they let me go.

17       Q    Immediately after?

18       A    No, not immediately after.  I was in the

19   building.  We was in the building.  I was talking to my

20   property manager was talking to me about, like, what       15:16:19

21   happened and stuff.  So I told her the same thing I told

22   Xasha.  I got into it with some guy around the corner.

23   I guess he called the police or something and said I --

24   said I had a gun.  Because I told him the officers said

25   -- the officers said they got a call that I had a gun on   15:16:33

Videotaped Deposition of Glenn Berry

Hannah Kaufman & Associates, Inc.

1          I do hereby certify that the witness in the

2    foregoing deposition was by me duly sworn to testify the

3    truth, the whole truth, and nothing but the truth in the

4    within-entitled cause; that said deposition was taken at

5    the time and place therein stated; that the testimony of

6    the said witness was reported by me, a Certified

7    Shorthand Reporter and a disinterested person, and was

8    under my supervision thereafter transcribed into

9    typewriting; that thereafter, the witness was given an

10   opportunity to read and correct the deposition

11   transcript, and to subscribe the same; that if unsigned

12   by the witness, the signature has been waived in

13   accordance with stipulation between counsel for the

14   respective parties.

15          And I further certify that I am not of counsel or

16   attorney for either or any of the parties to said

17   deposition, nor in any way interested in the outcome of

18   the cause named in said caption.

19          IN WITNESS WHEREOF, I have hereunto set my hand

20   the 27th day of July, 2017.

21

22   _____

     JESSICA AYRES

23   CSR No. 14180

24

25

Videotaped Deposition of Glenn Berry

EXHIBIT 2

# WESTCOAST
# LEGAL SERVICE

Ship to:  ***Brent, Fiol & Pratt, LLP
1000 4th Street, #750
San Rafael
(415) 839-8370
ATTN:  David L. Fiol
File No.                        Client No.:8398370

Case No.  3:17-cv-00056-EDL
Court  USDCN
Plaintiff  Berry Glenn
v  City & County of San Francisco, et al.
Records Regard:  Glenn, Berry (AKA: Glenn Berry Jerome;Berry Glenn)

Records From:  **Community Housing Partnership**
**20 Jones St #200**
**San Francisco,CA,94102**
**4158525300**

WLS# 25415325-08

## RECORDS SOUGHT

Any and all employment records including workers comp records pertaining to Glenn, Berry (AKA:
Glenn Berry Jerome;Berry Glenn), DOB: July 6, 1980

170741
ATTORNEY OF RECORD

WLS# 25315325-08

| San Francisco City Attorneys Office<br>1390 Market Street, 6th Fl<br>San Francisco, CA  94102 | Case Number<br>3:17-cv-00056-EDL |
|---|---|
| UNITED STATES DISTRICT COURT<br>450 GOLDEN GATE AVE<br>SAN FRANCISCO, CA  94102 | **DECLARATION**<br>**OF CUSTODIAN OF RECORDS** |

PLAINTIFF:   Berry Glenn

DEFENDANT: City & County of San Francisco, et al.

DEPONENT:  Community Housing Partnership
RECORDS REGARD:  Glenn, Berry (AKA: Glenn Berry Jerome;Berry Glenn)
DEPOSITION DATE:   May 22, 2017

I, the undersigned, being the duly authorized Custodian of Records or other qualified witness,  and having the authority to certify the records declare the following: the records were prepared in the ordinary course of business at or near the time of the act, condition or event, and that:

**CERTIFICATION OF RECORDS**

☑ All of the records called for in the subpoena  or written release are in my custody and have  been copied by this Deponent. A true and legible copy  of or  said records are submitted herein.

☐ All of the records called for in the subpoena  or written release are in my custody and have  been released to a WESTCOAST LEGAL  SERVICE representative for the purpose of copying.

**BILLING RECORDS (if requested)**
☐ Billing records are produced herein.
  ☐ We do not have billing records as requested.

**X-RAYS/MRI'S/IMAGING (if requested)**
☐ X-Rays/MRI'S/Imaging &/or other imaging are produced herein.
  ☐ We do not have X-Rays/MRI'S/Imaging &/or other imaging.

**PATHOLOGY (if requested)**
☐ Pathology materials are produced herein.
  ☐ We do not have Pathology materials requested.

**CERTIFICATION OF NO RECORDS**

☐ A thorough search of our files has been  carried out under my direction. Based on the  information provided for identification, no  documents, records or other materials called for in  the subpoena or written release exist in our files.

**SELECT REASON**
☐ All records for the time period in  question have been destroyed pursuant to  our document retention policy.

☐ Records do exist, but none within the  time period called for in the subpoena or  written release.

☐ A complete and thorough search has  been conducted and no such records were found.

☐ Other: _____

_____

(if more space is needed, please attach additional sheet.)

As custodian, I testify to the records identity & method of preparation. The source of the information & method of preparation were such as to indicate their trustworthiness. I declare under penalty of perjury that the foregoing is correct.

Signature: _____    Print Name: _Marcela Vargas_

Executed on (date): __5/30/117__    at (city, state): _San Frevesco, CA_

**DECLARATION OF PROFESSIONAL PHOTOCOPIER** (BPC Section 22462)
WestCoast Legal Service, 1245 S Winchester Blvd #208, San Jose CA 95128.
County of Registration: Santa Clara;  Process Server Registration No: 862;  PhotoCopy Registration No: 48.
I declare that I am the attorney's representative & that I made copies/scanned all the records delivered to me or am forwarding the records provided by the Custodian of Records of the within named Deponent & these records will be distributed only to the authorized persons or entities.

Executed on _____ at _____ CA.

Signature: _____    WestCoast Legal Service

## DECLARATION OF CUSTODIAN OF RECORDS

ASMS01/25315325-08

ATTORNEY OF RECORD                                                    WLS# 25315325-08

| | |
|---|---|
| San Francisco City Attorneys Office<br>1390 Market Street, 6th Fl<br>San Francisco, CA  94102 | Case Number<br>3:17-cv-00056-EDL |
| UNITED STATES DISTRICT COURT<br>450 GOLDEN GATE AVE<br>SAN FRANCISCO  CA  94102 | |

PLAINTIFF:   Berry Glenn

DEFENDANT: City & County of San Francisco, et al.

DEPONENT:  Community Housing Partnership
RECORDS REGARD:  Glenn, Berry (AKA: Glenn Berry Jerome;Berry Glenn)
DEPOSITION DATE:   May 22, 2017

## DECLARATION OF PROFESSIONAL PHOTOCOPIER  [BPC Section 22462]

### I, the undersigned, Declare:

I am the attorney's representative.

I am an authorized agent of WestCoast Legal Service.

A registered Professional Photocopier, registered in Santa Clara County, California.

That the records provided to me by the Custodian of Records of the within named Deponent/Facility will be distributed only to the authorized persons or entities.

I have made copies/scans of or produced the records presented to me.

The Deponent/Facility was presented with a records affidavit/declaration to complete.

If no Affidivit/Declaration accompanies the records, none was given to WLS or the deponent/custodian refused to sign it.


WestCoast Legal Service

1245 S Winchester Blvd #208

San Jose CA 95128.

County of Registration: Santa Clara

Process Server Registration No: 862

Photocopy Registration No: 48.

Signature: _Lillian Burke_____          Executed:  _May 22, 2017_____
                    Lillian Burke


## DECLARATION OF PROFESSIONAL PHOTOCOPIER

AO 88B (Rev. 2/14 ) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

Case 3.17-cv-00056-EDL    Document 54-1    Filed 04/24/18    Page 26 of 64

NLS# 25315325-08

# United States District Court

## for the
### NORTHERN DISTRICT/SAN FRANCISCO of CALIFORNIA

Berry Glenn

)
)
*Plaintiff*                                                                    )        Civil Action No. 3:17-cv-00056-EDL
v.                                                                                    )
City & County of San Francisco, et al.                      )
                                                                                          )
*DEFENDANT*

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

TO:      CUSTODIAN OF RECORDS OF: Community Housing Partnership, 20 Jones St #200, San Francisco,
CA 94102 Telephone No. (415) 852-5300

*(Name of person to whom this subpoena is directed)*

☒  *Production:* **YOU ARE COMMANDED** to produce at the time, date and place set forth below the
following documents, electronically stored information, or objects, and to permit inspection, copying,
testing, or sampling of the material:

Any and all employment records including workers comp records pertaining to Glenn, Berry (AKA: Glenn Berry
Jerome;Berry Glenn), DOB: July 6, 1980

| Place:                                                    Phone: (800) 698-8177 | Date and Time: |
|---|---|
| WestCoast Legal Service<br>1245 S Winchester Blvd #208, San Jose  CA 95128 | 5/22/2017 10:00:00 |

☐  *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises,
land, or other property possessed or controlled by you at the time, date, and location set forth below,
so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or
any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached - Rule 45(c), relating to the place of compliance;
Rule 45(d), relating to your protection as a person subject to a subpoena, and Rule 45(e) and (g), relating to your
duty to respond to this subpoena and the potential consequences of not doing so.

**Date: April 21, 2017**

*CLERK OF COURT*

                                                                    OR     *Renee Erick*

_____                              _____
*Signature of Clerk or Deputy Clerk*                                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Defendant City &
County of San Francisco, who issues or requests this subpoena, are:
Renee Erickson  SBN:304983, E-Mail: Renee.Erickson@sfgov.org, San Francisco City Attorneys Office, 1390 Market Street, 6th Fl,
San Francisco, CA 94102, (415) 554-3800

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a
copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).           25315325-08/A088B

AO 88B (Rev. 2/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Case 3:17-cv-00056-EDL   Document 54-1   Filed 04/24/18   Page 26 of 64

WLS#25315325-08

Civil Action No. **3:17-cv-00056-EDL**

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* **Community Housing Partnership**
on *(date)* **04/21/2017**

☒ I served the subpoena by delivering a copy to the named individual as follows: **Paul Fox, 20 Jones St #200, San Francisco, CA 94102**

_____ on *(date)* **4/25/2017 or**

☐ I returned the subpoena unexecuted because ;

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of
$ **15.00**

**My fees are $ _____ for travel and $ _____ for services, for a total of $ _____**

I declare under penalty of perjury that this information is true.

Date: 04/25/2017

_____
*Server's signature*

**Esquivel Bacani  Process Server**
*Printed name and title*

**1245 S Winchester Blvd #208, San Jose, CA 95128**
*Server's Address*

*Additional information regarding attempted service, etc:*

## RECORD CONTENT

The Facility has indicated:

☑ **All of the records sought have been provided.**

WLS is continuing follow up on:

☐ Billing records  ☐ X-Ray/Radiology/Imaging  ☑ Declaration

☐ Records sought were provided under WLS# _____

☐ Additional records described below to follow:

_____

Location/Dept. only has: ☐ Billing  ☐ Medical  ☐ Radiology

## NO RECORD

The Facility has indicated:

☐ No Records

☐ No Records for the Specified Time Frame

☐ No Billing Records ☐ No X-Rays/Radiology/Imaging

**If you have information that indicates otherwise, please provide it to our office.**

## COPY QUALITY

☐ Poor Quality Originals. Best possible image has been provided.

☐ WLS is working to obtain better copies of the page(s) listed:

_____

1/27/2016

### *WestCoast Legal Service*

*(800)698-8177 or e-mail: records@westcoastlegal.com*

[ Save Form As... ]   [ Print Form ]

LOG #: SEN-CIR-020216-P-D-01


community
housing
partnership

# Critical Incident Report Form

| HOW TO USE THIS FORM |
|---|

CHP Employees must complete this form immediately following incidents occurring at CHP sites. **The CIR is used to document an urgent or emergency situation for current medical or other life threatening issues, current psychiatric issues, emergency facility issue, urgent facility issue and/or external interactions. The presence of an emergency responder always requires a CIR to be completed.** (Refer to the CHP Critical Incident Response Procedure for details on responding to such situations.) If information is unknown or unavailable, please leave that line blank. Involved parties may be asked to provide further details or clarification. The completed form must be filed at the site and copies must be submitted to PM and SSD.

| **1. CONTACT INFORMATION** – of CHP employee completing this form |
|---|

Employee full name: **Xasha Washington**                          Date: **02/02/2016**

Employee position/title: **Desk Clerk**                          Work location: **Senator**

Staff involvement in incident: [■] Witness  [ ] Victim  [ ] Actively intervened  [ ] Reporter  [ ] Other (explain):

Impact(s) of incident: [ ] Medical care received  [ ] Medical care waived  [ ] Left work  [ ] Other (explain):

Called Property Manager at 12:30 ___ ( ) am (●) pm [■] Reached/contacted [ ] Left voicemail [ ] Returned call
Called next level manager at _____ (●) am ( ) pm [ ] Reached/contacted [ ] Left voicemail [ ] Returned call

| **2. INCIDENT SUMMARY** – provide as much information as possible, if unknown write "Don't Know" |
|---|

Incident date: **02/02/2016**   Day: ( )Su ( )M (●)Tu ( )W ( )Th ( )F ( )Sa   Time: 12:30 ( )am (●)pm

Building name: **Senator**    Location: **Next Door Parking lot**    Address: 519 Ellis Street  San Francisco, CA 94109

Departments involved: [■] PM  [ ] SSD  [ ] CORE  [ ] SSF  [ ] Admin

Please indicate the incident type(s) – more than one may apply, so review carefully and check ALL that apply.

[■] Assault or attempted assault         [ ] Evacuation (partial or entire)      [ ] Personal property theft
[ ] Burglary (break and enter)           [ ] External interaction                [ ] Trespassing/security breach
[ ] Confidentiality breach               [ ] Fire/flood/water damage/gas leak    [ ] Violence/criminal threat
[ ] CPS/APS evaluation                   [ ] Hospitalization                     [ ] Other building issue:
[ ] Death/fatality                       [ ] Injury/illness                      [ ] Other criminal issue:
[ ] Emergency responder on-site          [ ] Mental health crisis ("5150")       [ ] Other medical/psychiatric:

Authorities contacted? [■] Yes [ ] No   Authorities responded: [■] Police [ ] Fire [ ] Paramedics [ ] Other:

Authority response: [ ] Arrest made  [ ] Ambulance transport  [ ] Fire extinguished  [■] Other (list): Police made attempt to arrest but let him go.

Police report filed? [ ] Yes [■] No    Responding officer name: **Did not receive this information**

Police report #: unable to get this information.   Officer badge #:              Station:

**ALSO COMPLETE ALL PAGES**

**000063**

LOG #: SEN-CIR-020216-P-D-01



community
housing
partnership

## 3. INCIDENT NARRATIVE – describe what happened, including specific details

I was standing outside on a smoke break , i saw Glenn, we started talking and then immediately the police came to us with guns drawed and told us to get down on the ground. before i could even get on the ground, they kicked glenn down to the ground and started stomping him on his back. i repeatedly told them he didnt have a gun he was unarmed and they pushed me to the side kicking my knee cap an told me to stand back. I stepped back and came in the building and told Stephanie and she went outside. At this time I went back behind the desk because PM handled the situation.

## 4. INVOLVED PARTIES – provide information for all involved parties (attached additional pages if needed)

Full name: **Glenn Berry**                                                   Phone:

Relationship to CHP: ☐ Tenant (unit #_____)  ☐ Guest (ID #_____)  ☑ Employee  ☐ Other:

Involvement: ☐ Witness  ☑ Victim  ☐ Suspect  ☐ Responded  ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received  ☐ Medical care waived  ☐ Arrested  ☐ Other (explain):

**000064**

LOG #: SEN-CIR-020216-P-D-01

**community
housing
partnership**

| Full name: Xasha Washington | Phone: (415) 829-6173 |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest of (unit #_____) ☑ Employee ☐ Other:

Involvement: ☑ Witness ☑ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: Stephanie Cooper | Phone: (925) 329-8394 |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☑ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☑ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

## 6. CERTIFICATIONS – initial, date, and email, submit online, and make copies

I have notified: ☑ My supervisor (required) ☐ Other:

By initialing below, I certify that I have provided accurate and complete information regarding this incident and involved parties.

| Employee initials: X.W | Date: 02/02/2016 |
|---|---|

**\*\*\* SUBMIT COMPLETED FORM TO PROPERTY MANAGER AND SSD \*\*\***

*3 of 3*                                                                 *Updated December 2015*

[ Save Form As... ]  [ Print Form ]

[ Save Form As... ]  [ Print Form ]

LOG #: SEN-CIR-020316-P-D-01

**community
housing
partnership**

# Critical Incident Report Form

## HOW TO USE THIS FORM

CHP Employees <u>must</u> complete this form immediately following incidents occurring at CHP sites. **The CIR is used to document an urgent or emergency situation for current medical or other life threatening issues, current psychiatric issues, emergency facility issue, urgent facility issue and/or external interactions. The presence of an emergency responder always requires a CIR to be completed.** (Refer to the CHP Critical Incident Response Procedure for details on responding to such situations.) If information is unknown or unavailable, please leave that line blank. Involved parties may be asked to provide further details or clarification. The completed form must be filed at the site and copies <u>must</u> be submitted to PM and SSD.

## 1. CONTACT INFORMATION – of CHP employee completing this form

Employee full name: **Stephanie Cooper**                Date: **02/03/2016**

Employee position/title: **Property Manager**           Work location: **Senator**

Staff involvement in incident: ☐ Witness  ☐ Victim  ☐ Actively intervened  ☒ Reporter  ☐ Other (explain):

Impact(s) of incident: ☐ Medical care <u>received</u>  ☐ Medical care <u>waived</u>  ☒ Left work  ☐ Other (explain):

Called Property Manager at 12:46    ☐ am  ☒ pm   ☒ Reached/contacted  ☐ Left voicemail  ☐ Returned call

Called next level manager at _____  ☒ am  ☐ pm   ☐ Reached/contacted  ☐ Left voicemail  ☐ Returned call

## 2. INCIDENT SUMMARY – provide as much information as possible, if unknown write "Don't Know"

Incident date: **02/02/2016**   Day: ☐ Su  ☐ M  ☒ Tu  ☐ W  ☐ Th  ☐ F  ☐ Sa   Time: **12:46**  ☐ am  ☒ pm

Building name: **Senator**   Location: **Next door parking lot**   Address: 519 Ellis Street  San Francisco, CA 94109

Departments involved: ☒ PM  ☐ SSD  ☐ CORE  ☐ SSF  ☐ Admin

Please indicate the incident type(s) – more than one may apply, so review carefully and check <u>ALL</u> that apply.

☒ Assault or attempted assault          ☐ Evacuation (partial or entire)       ☐ Personal property theft
☐ Burglary (break and enter)            ☐ External interaction                 ☐ Trespassing/security breach
☐ Confidentiality breach                ☐ Fire/flood/water damage/gas leak    ☒ Violence/criminal threat
☐ CPS/APS evaluation                    ☐ Hospitalization                      ☐ Other building issue:
☐ Death/fatality                        ☐ Injury/illness                       ☐ Other criminal issue:
☐ Emergency responder on-site           ☐ Mental health crisis ("5150")        ☐ Other medical/psychiatric:

Authorities contacted? ☒ Yes  ☐ No   Authorities responded: ☒ Police  ☐ Fire  ☐ Paramedics  ☐ Other:

Authority response: ☐ Arrest made  ☐ Ambulance transport  ☐ Fire extinguished  ☐ Other (list):

Police report filed? ☐ Yes  ☒ No   Responding officer name: **UNABLE TO OBTAIN INFO**

Police report #:         Officer badge #:         Station:

**ALSO COMPLETE ALL PAGES**

000066

LOG #: SEN-CIR-020316-P-D-01



community
housing
partnership

## 3.  INCIDENT NARRATIVE – describe what happened, including specific details

On Tuesday, February 2, 2016 at or around 12:46pm I finished up with client Crystal Martin and walked her out of my office and saw Lead Desk Clerk Xasha Washington and Support Services Supervisor Khadijah Grant standing outside speaking to an officer nearby. While speaking with Ms. Martin and walking her out I looked up and Khadijah and Xasha were waiting to speak with me. When Crystal left the lobby they began telling me why the police was out front and that it involved Glenn Berry (on call janitor) who was on a lunch break at the time. "Glenn got into it with someone outside and the police have him in handcuffs right now in the front of the building" Xasha stated. I went outside to see what was going on and stood nearby the officer on duty and Glenn Berry who at the time had on handcuffs but not very recognizable as a CHP employee because he had on sagging pants and a hoodie sweat shirt but no badge nor did he have on uniform as if he was at work. "What is going on?" I asked both the officer and Glenn. However, I received no response and over heard the officer talking to an angry Glenn who often said "fuck yall" "that man standing down there said hat you had an gun and tried to attack him." Glenn replied "I was at work smoking a cigarette outside and he approached me asking me if I had some weed I told the man to get the fuck out of here with that shit and thats when I struck him." (he said more but since he was talking with the officer at the time I only caught bits and pieces of the conversation and this was one of the pieces) The officer then asked him "So wait a minute you struck him, you hit that man?" At this point Glenn stopped talking and then said "I don't know if I hit him or not actually." I then walked away into the building so that I can write an incident report on what I had gathered from the bits of their conversation. When the brief investigation was over Glenn came back into work and I asked him to come in to my office and I closed the door (putting back on his CHP uniform). He took a seat and when asked "what happened outside" he said nothing at all. However after one minute or so he said "My back hurts now." I asked him again what happened and he refused to engage fully about what went on. Shortly after, Glenn came to me asking if he could go home because his back really hurt and he could not work the rest of the day. "I am mad as fuck right now because of what happened man." He repeatedly said.

At this point still not hearing from him as to what happened, where it exactly occurred and who were involved.

## 4.  INVOLVED PARTIES – provide information for all involved parties (attached additional pages if needed)

Full name: **Glenn Berry**                                                     Phone: **(415) 894-7944**

Relationship to CHP: ☐ Tenant (unit #_____)  ☐ Guest (ID #_____)  ☒ Employee  ☐ Other:

Involvement: ☐ Witness  ☒ Victim  ☒ Suspect  ☐ Responded  ☒ Other (explain): **staff allegedly hit pedestrian**

Impact(s) of incident: ☐ Medical care received  ☒ Medical care waived  ☐ Arrested  ☐ Other (explain):

**000067**

LOG #: SEN-CIR-020316-P-D-01

community
housing
partnership

| Full name: Xasha Washington | Phone: (415) 829-6173 |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest of (unit #_____) ☑ Employee ☐ Other:

Involvement: ☑ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: Stephanie Cooper | Phone: (415) 563-3205 |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☑ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☑ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

## 6. CERTIFICATIONS – initial, date, and email, submit online, and make copies

I have notified: ☑ My supervisor (required) ☐ Other:

By initialing below, I certify that I have provided accurate and complete information regarding this incident and involved parties.

| Employee initials: SC | Date: 02/03/2016 |
|---|---|

**\*\*\* SUBMIT COMPLETED FORM TO PROPERTY MANAGER AND SSD \*\*\***

Updated December 2015

[ Save Form As... ]  [ Print Form ]

000068

| Save Form As... | Print Form |
| --- | --- |

LOG #: 20Jones-CIR-020216-P-D-01


community
housing
partnership

# Critical Incident Report Form

## HOW TO USE THIS FORM

CHP Employees must complete this form immediately following incidents occurring at CHP sites. **The CIR is used to document an urgent or emergency situation for current medical or other life threatening issues, current psychiatric issues, emergency facility issue, urgent facility issue and/or external interactions. The presence of an emergency responder always requires a CIR to be completed.** (Refer to the CHP Critical Incident Response Procedure for details on responding to such situations.) If information is unknown or unavailable, please leave that line blank. Involved parties may be asked to provide further details or clarification. The completed form must be filed at the site and copies must be submitted to PM and SSD.

## 1. CONTACT INFORMATION – of CHP employee completing this form

Employee full name: **Juana Nunley**                    Date: **02/02/2016**

Employee position/title: **Director of PM**              Work location: **PM Admin**

Staff involvement in incident: ☐ Witness  ☐ Victim  ☐ Actively intervened  ☑ Reporter  ☐ Other (explain):

Impact(s) of incident: ☑ Medical care received  ☐ Medical care waived  ☑ Left work  ☐ Other (explain):

Called Property Manager at _____ ○ am ○ pm ☐ Reached/contacted ☐ Left voicemail ☐ Returned call

Called next level manager at _____ ○ am ○ pm ☐ Reached/contacted ☐ Left voicemail ☐ Returned call

## 2. INCIDENT SUMMARY – provide as much information as possible, if unknown write "Don't Know"

Incident date: **02/02/2016**   Day: ○ Su ○ M ◉ Tu ○ W ○ Th ○ F ○ Sa   Time: **03:30** ○ am ◉ pm

Building name: **Senator**   Location: **Outside in Front**   Address: 519 Ellis Street  San Francisco, CA 94109

Departments involved: ☑ PM  ☐ SSD  ☐ CORE  ☐ SSF  ☑ Admin

Please indicate the incident type(s) – more than one may apply, so review carefully and check ALL that apply.

☐ Assault or attempted assault
☐ Burglary (break and enter)
☐ Confidentiality breach
☐ CPS/APS evaluation
☐ Death/fatality
☑ Emergency responder on-site

☐ Evacuation (partial or entire)
☐ External interaction
☐ Fire/flood/water damage/gas leak
☐ Hospitalization
☑ Injury/illness
☐ Mental health crisis ("5150")

☐ Personal property theft
☐ Trespassing/security breach
☐ Violence/criminal threat
☐ Other building issue:
☐ Other criminal issue:
☐ Other medical/psychiatric:

Authorities contacted? ☑ Yes ☐ No   Authorities responded: ☑ Police ☐ Fire ☑ Paramedics ☐ Other:

Authority response: ☐ Arrest made ☑ Ambulance transport ☐ Fire extinguished ☑ Other (list): **Detained & Released**

Police report filed? ☑ Yes ☐ No   Responding officer name: **Mike Cunnie**

Police report #: **unknown**   Officer badge #: **181**   Station: **Tenderloin**

**ALSO COMPLETE ALL PAGES**

**000069**

LOG #: 20Jones-CIR-020216-P-D-01

community
housing
partnership

| Full name: Marcela Vargas | | Phone: |
|---|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest of (unit #_____) ☑ Employee ☐ Other: Human Resources

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☑ Responded ☐ Other (explain): Assisted Glenn and Juana & C

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: Xasha Washington | | Phone: |
|---|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☑ Employee ☐ Other: Day Desk Clerk - Lead

Involvement: ☑ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | | Phone: |
|---|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | | Phone: |
|---|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | | Phone: |
|---|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

### 6. CERTIFICATIONS – initial, date, and email, submit online, and make copies

I have notified: ☑ My supervisor (required) ☑ Other: Gail Gilman intervened

By initialing below, I certify that I have provided accurate and complete information regarding this incident and involved parties.

Employee initials: JN                                    Date: 02/02/2016

### *** SUBMIT COMPLETED FORM TO PROPERTY MANAGER AND SSD ***

3 of 3                                                    Updated December 2015

[ Save Form As... ]    [ Print Form ]

**000070**

LOG #: 20Jones-CIR-020216-P-D-01



community
housing
partnership

## 3. INCIDENT NARRATIVE – describe what happened, including specific details

At approximately 3:30 p.m. Glenn came to the corporate office and was laying on the bench out in the lobby area. Glenn reported that he went on lunch break at approximately 12:00 noon on Tuesday 2/2/16 and was going to the corner store on O'Farrell Street with his cousin that works at AWA. Glenn reports that while outside of the store a man Glenn described as "Cuban" approached him asking if Glenn was selling marijuana. Glenn stated he responded to leave me alone and the man continued to approach Glenn aggressively. Glenn mentioned he begin walking back to the Senator and the man followed Glenn back to the Senator. While the man followed Glenn, Glenn stated that the man was on the phone calling the police saying that Glenn had a gun. Glenn stated the police arrived at the Senator and approached Glenn with guns drawn and detained him. Glenn mentioned that he was outside on the ground in front of the Senator (519 Ellis Street) near the gate entrance and the police used aggressive force in his back and Glenn said he was injured. After the police detained Glenn, not finding a gun, Glenn was released by the police and then returned to work he said approximately at 12:45. Glenn mentioned he begin slowly walking towards 20 Jones because he was in pain and could barely walk. Glenn said that he went to the police department to make a report of what happened and then walked to the barber shop on Jones Street to rest, then he walked to 20 Jones Street. Glenn arrived to 20 Jones at approximately 3:30 p.m. and Marcela came to get Juana Nunley as the property management director. Marcela and Juana contacted the ambulance for care of Glenn due to the pain he described and took his report of the incident. Both the 3 ambulance staff and 4 police officers arrived and one was Officer Mike Cunnie #181 to ask Glenn more questions about the incident he described and to get more information for Glenn.

On 2/2/16, at approximately 5:30 p.m. Sgt Shaughn Ryan #1756 came to follow-up on the incident and provide more details of the situation. Sgt Ryan mentioned that the call came in to the Tenderloin Station about someone with a gun to which Glenn fit the description of a previous shooting incident on 2/1/16 around Ellis Street. The police quickly followed up on the call and searched Glenn and when he didn't appear to have a gun was released and provided a detainer slip. Sgt Ryan mentioned that Glenn was known in the community with the detaining officers for other incidents he has been involved in and the officers at the incident doesn't appear to describe the incident like Glenn as far as Glenn being aggressive and hurting his back.

## 4. INVOLVED PARTIES – provide information for all involved parties (attached additional pages if needed)

Full name: **Glenn Berry**                                              Phone:

Relationship to CHP: ☐ Tenant (unit #_____)  ☐ Guest (ID #_____)  ☑ Employee  ☐ Other:

Involvement: ☐ Witness  ☐ Victim  ☐ Suspect  ☐ Responded  ☑ Other (explain): Employee Injury

Impact(s) of incident: ☑ Medical care <u>received</u>  ☐ Medical care <u>waived</u>  ☐ Arrested  ☑ Other (explain): Detained & Released

**000071**

EXHIBIT 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GLENN BERRY,

        Plaintiff,

vs.                  CASE NO. 17-CV-00056-EDL

CITY AND COUNTY OF SAN
FRANCISCO and POLICE OFFICER
ANTHONY ASSERETO,

        Defendants.

_____/

DEPOSITION OF
JUANA NUNLEY
October 2, 2017

Reported by:  HANNAH KAUFMAN & ASSOCIATES, INC.
JESSICA AYRES  Certified Shorthand Reporters
CSR# 14180     150 Executive Park Blvd., Suite 4600
San Francisco, California 94134-3333
(415) 337-2077

Hannah Kaufman & Associates, Inc.

```
 1                        I N D E X

 2

 3    DEPOSITION OF JUANA NUNLEY

 4

 5    Examination by                        PAGE

 6    Mr. Oldfather                         5, 98

 7    Mr. Fiol                              55

 8

 9

10                    E X H I B I T S

11

12                   DESCRIPTION              PAGE

13    Exhibit A      Colored photograph         9

14    Exhibit B      Bates stamp 62-64         29

15    Exhibit C      Bates stamp 69-71         55

16    Exhibit D      Letter re: Incident Report  68

17    Exhibit E      Bates stamp 63-65         73

18    Exhibit F      Bates stamp 66-68         78

19    Exhibit G      Notification dated        84

20                   March 01, 2016

21    Exhibit H      Employer's Report of      86

22                   Occupational Injury or Illness

23    Exhibit I      Memorandum re: Use of Force  89

24                   Investigation

25
```

2

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1          BE IT REMEMBERED that, pursuant to Notice of

2     Taking Deposition, and on Monday, the 2nd day of

3     October, 2017, commencing at the hour of 10:11 a.m.

4     thereof, at the offices of SAN FRANCISCO CITY ATTORNEY'S

5     OFFICE, 1390 Market Street, 7th Floor, San Francisco,

6     California, before me JESSICA AYRES, a Certified

7     Shorthand Reporter in the State of California,

8     personally appeared,

9                    JUANA NUNLEY,

10    called as a witness herein; and the said witness, being

11    by me first duly sworn, was thereupon examined and

12    testified as is hereinafter set forth.

13                      - - -

14

15

16

17

18

19

20

21

22

23

24

25

3

Hannah Kaufman & Associates, Inc.

```
 1
 2
 3                     A P P E A R A N C E S :
 4
 5
 6   FOR THE PLAINTIFF:
 7        Law Offices of BRENT, FIOL & PRATT LLP
 8        1000 FOURTH STREET, SUITE 750
 9        SAN RAFAEL, CALIFORNIA 94901
10        By DAVID L. FIOL, Attorney at Law
11        415-839-8370
12        dfiol@bfplawyers.com
13
14   FOR THE DEFENDANT:
15        Law Offices of SAN FRANCISCO CITY ATTORNEY'S
16   OFFICE
17        1390 MARKET STREET, 6TH FLOOR
18        SAN FRANCISCO, CALIFORNIA 94102-5408
19        By NEWTON OLDFATHER, Deputy City Attorney
20        415-554-3800
21        Newton.oldfather@sfgov.org
22
23
24
25                          ---
```

4

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1              JUANA NUNLEY,

2        sworn as a witness by the Certified

3        Shorthand Reporter, testified as follows:

4                EXAMINATION

5    BY MR. OLDFATHER:

6        Q    Good morning, Miss Nunley.  My name is Newton

7    Oldfather.  I represent the City and County of San

8    Francisco.  We met off the record a second ago and kind

9    of talked about the rules of a deposition.  You may

10   notice that I'm speaking kind of slowly and differently

11   than I did when we were off the record.  That's for the

12   benefit of the court reporter, who's an excellent court

13   reporter and is taking down everything we say, but as

14   soon as we start speaking very fast or start speaking

15   over each other, it becomes immensely difficult for her

16   to create a clear record.

17       A    Okay.

18       Q    So I will do my best not to speak over you, and

19   please do your best to wait until I finish my questions.

20   At times I might remind you of that.  I'm not trying to

21   be rude, I'm just trying to make sure that it's a clear

22   record.

23            Do you understand that?

24       A    Yes.

25       Q    I'm going to ask you some questions today about

Deposition of Juana Nunley

1    your knowledge of an individual named Glenn Berry, and

2    I'm going to ask you questions specifically about an

3    incident that happened on February 2nd, 2016, between

4    Glenn Berry and some police officers with the San

5    Francisco Police Department.  If you don't know an

6    answer to a question, I don't want to you guess, but if

7    you have an estimate, I want you to give me your best

8    estimate.  For example, if I ask you how long ago

9    something occurred, obviously you do not know that it

10   occurred 154 days ago, but you could probably guess that

11   it happened three or four months ago.  Does that make

12   sense?

13        A    Yes.

14        Q    So I want you to give me your estimate even if

15   the question calls for a very specific answer.  If I'm

16   asking you for an exact number or something like that,

17   I'll tell you.

18        A    Okay.

19        Q    How long -- well, let me ask you this first.

20   What does CHP stand for?

21        A    Community Housing Partnership.

22        Q    How long did you work at Community Housing

23   Partnership?

24        A    Since October or November of 2012.

25        Q    Do you still work there?

6

Hannah Kaufman & Associates, Inc.

1        A    No, I don't.

2        Q    When did you leave CHP?

3        A    My last day was towards the end of October of

4    2016. I started my new job November 1st, 2016, so I

5    know it was, like, the end of November -- October

6    because I didn't have any days off.

7        Q    What did you do while you were at CHP?

8        A    I was director of property management.

9        Q    Can you describe for me generally what that job

10   entailed for you over the course of your four years at

11   CHP?

12       A    The job entails overseeing operations of the

13   properties across San Francisco and Treasure Island.

14       Q    When you said "oversee operations," can you

15   give me a five- or six-sentence description of what you

16   would do every day?

17       A    So that would include ensuring on an everyday

18   basis -- I would say ensuring that the properties are

19   operating, you know, like in operations, meaning, like,

20   functioning. It was properties that range from 50 to

21   100 units and -- so across San Francisco, close to the

22   vicinity, meaning, like, just making sure there's no

23   fire safety issues, there's no -- you know, making sure

24   we're collecting rent, making sure residents are safe,

25   making sure staff are safe, making sure everybody's at

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1    work so we can cover the desk.  So just trying to be

2    specific instead of saying, like, financial feasibility

3    and property sustainability.  Overall, that was what the

4    director does, but daily operations would be making sure

5    day-to-day stuff is done at the property.  Cleaning it,

6    making sure there's no spills, you know, stuff like

7    that.  I didn't do it directly myself.  I was making --

8    the overseer, making sure that other people did it.

9        Q    Was determining who is hired and who is fired

10    for certain jobs, was that part of your employment?

11        A    I wouldn't say hired as much as fired.  I would

12    say I was more directly related in those that may be

13    fired than I was in more the day-to-day jobs being

14    hired, like desk clerks or janitors or maintenance.  It

15    was more directly those who were supervised directly by

16    me, not those indirectly.

17        Q    Are you familiar with an individual named Glenn

18    Berry?

19        A    Yes.

20        Q    I'm going to show you a photograph of Glenn

21    Berry just so we make sure we're talking about the same

22    person.

23            MR. FIOL:  Are you going to mark it?

24            MR. OLDFATHER:  Yeah, I'm going to mark it.

25    Does that look like him?

8

1    remember that part.

2        Q    Do you have any idea about why he was lying

3    down?

4        A    No.  He seemed like something was wrong.  You

5    know, like, he was really escalated.  Like, he was -- he

6    felt mistreated, he felt like something didn't happen

7    right.  I don't remember, like, exactly what was wrong

8    or what was hurt or what was -- I don't remember that.

9        Q    Did he tell you anything about how the actual

10   incident with the police officers occurred?

11       A    I remember him saying that, "Ask Xasha.  She

12   saw it all," and I remember him saying something like

13   they mistaken him for somebody else and that, you know,

14   they, you know, falsely arrested him, and he was just on

15   his lunch, and I remember those -- those things.

16       Q    Did he tell you about any kind of force that

17   the officers used?

18       A    I remember those types of engagements when the

19   officers got there.  Officers -- after the officers got

20   there, there was more communication about what happened.

21       Q    Was that with the officers or with Glenn Berry?

22       A    It was him explaining it, like, in -- telling

23   the officers like, "This is what happened," and that's

24   where I overheard most of those conversations going on,

25   and that's what the back and forth -- seemed like he got

1   to know if that's the follow up you're talking about

2   after the e-mail with the chief?

3       A   Yes, that is the follow up.  I'm thinking,

4   like, it was the next day or something, but I guess it

5   was the same day, but I e-mailed her right away and --

6   and asked her about it.  And then I'm supposing this is

7   who she sent, but I don't remember his name, I'm sorry.

8       Q   That's fine.  I was just trying to figure out

9   if that's the follow up after the e-mail or if that's

10  some other follow up I'm not aware of.

11      A   Yes, this is the same follow up.  There was no

12  additional follow up.

13      Q   Okay, great.

14      A   Because how our incident reports go, you can

15  actually send electronically, and you can send it in,

16  that type of thing if that makes sense.  We require our

17  incident reports are in by 10:00 a.m. the next day if

18  the incident happens, if that makes sense.  I know there

19  was some follow up.

20      Q   So how long did the conversation last with the

21  officers there with Glenn Berry?

22      A   It wasn't long, and I know I keep saying that,

23  I'm so sorry.

24      Q   No, that's fine.

25      A   It's so hard when you're in the midst of the

Hannah Kaufman & Associates, Inc.

1       Q    It's not easy.

2            Do you know of any relationship between Xasha

3   Washington and Glenn Berry?

4       A    No, just coworkers.

5       Q    Right, besides being coworkers.  I'm going to

6   give you back this page to the document.  Can you

7   describe for me how these incident reports are kept at

8   CHP?

9       A    I think there's like a log, like a PDF log of

10  the incident reports that's kept on the server.  When

11  they're submitted, they have a, you know, incident

12  report number, as assigned here, based on where it

13  happens and, you know, what time of the shift.

14      Q    What does CHP use these incident reports for?

15      A    To document incidents that may occur or to

16  follow up if need be.

17      Q    Do they keep them -- do they do these

18  regularly?  Do employees do these incident reports

19  regularly as part of their employment with CHP?

20      A    Yes.

21      Q    How long after the incident did you write that

22  document?

23      A    Right away.  I mean, our policy is, like, at

24  least by 10:00 a.m. the next day, so I'm sure I was in

25  that timeframe, or if not, definitely the next day.

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1      Q   Would you characterize this as a business
2   record of CHP?
3      A   Yes.
4      Q   Okay.  Have you ever looked back at incident
5   reports to rely upon them --
6      A   Yes.
7      Q    -- to figure out what happened at an incident
8   at CHP?
9      A   Yes.
10      Q   What I mean by that is incident reports written
11   by other people?
12      A   Yes.
13      Q   Okay.
14      A   Not sure why I wouldn't ask Xasha to do an
15   incident report, so I don't recall what occurred and why
16   I didn't.
17      Q   She did.
18      A   Okay.
19      Q   So you may have.
20      A   I don't recall.
21      Q   No, that's fair.  It's a long time ago.  Do you
22   remember anything else about Glenn Berry and this
23   incident that I haven't asked you about?
24         MR. FIOL:  Objection.  Vague.
25         THE WITNESS:  No.

50

Hannah Kaufman & Associates, Inc.

1    continuity between their records custodian and this

2    deposition.  So I'll mark this as Number 3.  I'm going

3    to ask you to take a look and see if it's the same thing

4    that you were looking at.  "C," I'm sorry, I said 3, but

5    I forget we're going on defendant.

6                (Exhibit C was marked for identification.)

7                          E X A M I N A T I O N

8    BY MR. FIOL:

9        Q    So if you could please take a look at Exhibit

10    C.  Is that the same statement that you were testifying

11    to as Exhibit B?  In other words, your statement from

12    shortly after the incident?

13        A    Uh-huh.  Yeah.

14        Q    Yes.

15        A    Yes.

16        Q    Okay.  Just a few questions about that.  So on

17    the first page it has a date.  It says 2/02/16 --

18        A    Uh-huh.

19        Q    -- toward the top right.  How is that date

20    graded?  Does that kind of pop up on the form on your

21    computer, or do you have to manually enter it?

22        A    You manually enter it.

23        Q    Okay.  So if it says "2/02," is it fair to

24    presume that that's when you wrote the report?

25        A    No.  This is, like, the date of the incident.

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1      Q    Okay.  Is there anywhere on the form that tells

2      us when you actually did the report?  And if I could,

3      actually, before you complete your answer, look at the

4      Box 2, and there it says "Incident date."

5      A    Okay.  Yes, then that would be me populating

6      this date saying, "This is the date I did it, and this

7      is the date the incident happened," yes, that's

8      accurate.

9      Q    Okay.  So in Box 1 where it says "2/02," that's

10     the date you did the report?

11     A    Yes.  Yes.  Plus, it also has a time and date

12     stamp when it's sent to the -- when I submit -- at the

13     top where it says -- well, some of the -- there is a

14     thing that says "submit" on here.

15     Q    Yeah.  Actually, if you look at the top left of

16     the form, there's a box that says "log."  Does that tell

17     you anything about the date that it was submitted?

18     A    Yes, the "2/02."

19     Q    Okay.  So that confirms that you even submitted

20     it, not just started it on 2/02?

21     A    Right.  Yeah.

22     Q    Okay.  Now, on the page where your incident

23     narrative is located, if you could turn to that.  I just

24     want to ask you about a few things.  First, generally,

25     have you had an opportunity to read both of the big

56

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1    aggressively, you know -- but not that he was beaten.

2        Q   Now, about the workers' comp forms, do you

3    remember anything about workers' comp forms of that

4    night?

5            MR. OLDFATHER:  Objection.  Asked and answered.

6            THE WITNESS:  I do not remember workers' comp

7    forms.

8    BY MR. FIOL:

9        Q   Is that something you handled in your position

10    at the CHP?

11        A   No.

12        Q   Okay.  I think we're done with that document.

13    This is now E.

14            (Exhibit E was marked for identification.)

15    BY MR. FIOL:

16        Q   Showing you what's been marked as Exhibit E,

17    and I'd like to ask you first if you've ever seen this

18    specific report before?

19        A   No, not that I can recollect.

20        Q   I'll represent, again, that it was produced

21    from the files of the CHP in response to the City's

22    subpoena.  So let me ask you a few things simply because

23    you're familiar with the form.  First, I guess, we'll

24    start at the top since we were looking at that log from

25    your report.  What is the log entry on this particular

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1    report tell us about the date that the report was
2    completed?

3        A    That it happened at the Senator; that it's a
4    critical incident report; and that it happened on
5    February 2nd; and that it was during the day, first
6    shift.

7        Q    Okay.  So this report was -- this tells you,
8    actually, that it was submitted during the day?

9        A    That this incident happened during the day,
10   what day it happened.  So typically they're supposed to
11   do the incident report on the day -- you know, at the
12   time -- you know, right after it happened.

13       Q    Okay.  What were the hours of the dayshift?

14       A    The dayshift is from 8:00 to 4:00.

15       Q    Okay.  So --

16       A    8:00 to 4:00 or 7:00 to -- I'm sorry, one of
17   them.  It's been a minute.

18       Q    So the log number at the top left?

19       A    12:00 to 8:00 -- yeah, so the shifts were from
20   12:00 to 8:00, 8:00 to 4:00, 4:00 to 12:00.

21       Q    Okay.  So the dayshift is 8:00 to 4:00?

22       A    Uh-huh.

23       Q    And this log is telling you that the report was
24   submitted during the dayshift, 8:00 to 4:00 p.m.?

25       A    Yes, because she leaves at 4:00.

74

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1        Q    "She" being Xasha?

2        A    Yes.

3        Q    So Xasha wrote this report sometime after the

4    incident, then, before 4:00 p.m.; is that fair?

5            MR. OLDFATHER:  Objection.  Calls for

6    speculation.

7            THE WITNESS:  I'm not the person who receives

8    the reports, so I would assume yes, that that's when she

9    did it, before she left that day, but doesn't mean that

10   she didn't do it the next day.  Like I said, they have

11   until 10:00 a.m. the next day to submit them.

12   BY MR. FIOL:

13       Q    I'm asking you what this log means.  Is that

14   log box at the top, is that logging when the report is

15   entered on the computer?

16       A    Yes.

17       Q    Okay.  So if the log says --

18       A    The report is entered on the computer the day

19   the incident happens.  That's the day that you're

20   supposed to put there based on the policy.  So if the

21   incident happens, it would be at the Senator, what kind

22   of report it was, the day of the incident, and -- I

23   forgot what it means before the "D," there's a meaning

24   for that.  There's a meaning for "P."

25       Q    Okay.

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1        A    And "D" is day.  "01" is how many incident
2    reports that day has she done.  She had only did one, if
3    that makes sense.
4        Q    Okay.  So "CIR" means critical incident
5    report --
6        A    Incident report, yeah.
7        Q    Okay.  So I'm still not clear.  Is the date and
8    the shift telling you the way the incident occurred, or
9    when this report was put into the computer?
10       A    When the incident occurred.
11       Q    Okay.  So somebody can fill that out, and
12   that's how it's logged?
13       A    Yes.  It's the date and timestamp that is
14   really important on the server.
15       Q    Got it.
16       A    Is what I was trying to say last time, I'm
17   sorry.
18       Q    Xasha's shift that day was 8:00 to 4:00, so we
19   can use that information to at least narrow down when
20   she wrote the report; is that fair?
21            MR. OLDFATHER:  Objection.  Calls for
22   speculation.  Argumentative.  Lacks foundation.
23            THE WITNESS:  I would say -- she worked from
24   8:00 to 4:00, but doesn't mean she wasn't working an
25   overtime day too, and I don't know that.

Deposition of Juana Nunley

1    BY MR. FIOL:

2        Q    Okay.  Based on what we see in Box 1 then, the

3    only thing we can tell from that is she wrote the report

4    on the same day as the incident?

5        A    Yes, sir.

6        Q    So at no point did you take a look at this

7    report; is that fair?

8        A    No.

9        Q    Not until today?

10        A    Right, I'm sorry.  Yes.

11        Q    Was there someone at the CHP that conducted an

12    investigation into this incident to figure out exactly

13    what happened?

14        A    No.  I mean, like I was saying earlier, it

15    wouldn't strike me as something that needed to be

16    investigated because it was something that was done

17    during someone's lunch and not really an incident of

18    mine, work related.  I mean, like, if it was a workers'

19    comp, it would be HR who does that, not me.  If it was

20    an incident where he was at the job and a tenant hit him

21    or a tenant -- you know, that would be me being directly

22    involved.  But because I had contacted the police, the

23    police came back and said that he was suspected of

24    something, it was during lunch, it wasn't during work

25    hours -- no.

Hannah Kaufman & Associates, Inc.

1       Q   Okay.  Now, earlier when you were talking about

2   your Critical Incident Report form, you said that this

3   is a business record that's regularly kept by the CHP

4   whenever a critical event happens.

5       A   Uh-huh.

6       Q   Can you say the same thing about this document?

7       A   Yes, they're all the same.

8       Q   It was a job requirement for Miss Washington

9   to make --

10      A   Yes.

11      Q   Let me finish.

12          -- to make a report as to her observations of

13  this critical incident; is that fair?

14      A   Yes.  Sorry, I thought you were done.

15      Q   It happens a lot because I pause a lot

16  unfortunately.

17          Let's mark the next document as Exhibit F.

18          (Exhibit F was marked for identification.)

19  BY MR. FIOL:

20      Q   I'll, again, represent this was produced by the

21  CHP in response to the City's subpoena, and I have

22  basically the same question that I did about the other

23  one.  Let me know when you're done.

24      A   Okay.

25      Q   Okay.  So I think I know the answer, but have

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1    you ever seen this specific report before?

2        A   Yes, sir.

3        Q   Oh, you did see it.  All right.

4        A   No.  No.  This report, the name of it, yes.

5    Not hers, no.  I have not, no.

6        Q   Okay.  So you've seen the form obviously lots

7    of times?

8        A   Seen the form.

9        Q   But you never saw Stephanie Cooper's report --

10       A   No.

11       Q   -- about this incident before?

12       A   No.

13          MR. OLDFATHER:  You saw everybody go, "Wow,"

14   put their head up when you said you've seen it before.

15          THE WITNESS:  Right, I'm like -- no, I did not

16   see this one.  All this is new.

17   BY MR. FIOL:

18       Q   Again, just like the others, this is a form

19   that people are required to fill out for critical

20   incidents?

21       A   Yes.

22       Q   Do you consider Glenn's interaction with the

23   police in front of the Senator Hotel a critical

24   incident?

25       A   Yes.

Hannah Kaufman & Associates, Inc.

1        Q   So you feel it was right and obligatory for

2    them to fill out the reports?  "Them" being Xasha and

3    Stephanie.

4        A   Right.  We have a list of what we consider

5    critical incident reports right here in this category.

6        Q   Got it.  And I guess there's a box at the top

7    of the form that gives you some sort of a description of

8    when you must fill out the form.  Do you see that?

9        A   Right.

10        Q   And it includes "External interactions."  What

11    does that mean exactly?

12        A   We have a lot of police that come to the

13    buildings for mental health crisis or 5150's or

14    ambulatories to take people who may have been sick, ill,

15    or passed away, and that's what we would consider an

16    external interaction.

17        Q   Basically --

18        A   If it's somebody that lives in the building.

19    So if it's not somebody that lives or works in the

20    building, you know, and it happens down the street,

21    we're not going to write an incident report for that.

22    But if it's somebody that's directly related to the work

23    or the buildings, that is considered an external

24    interaction -- that we witness.

25        Q   So basically anytime an employee of the CHP is

Deposition of Juana Nunley

Hannah Kaufman & Associates, Inc.

1    going to be involved with police officers, is that a

2    situation where someone is required to fill out these

3    reports?

4        A   Yes, sir.  What we consider dealing with the

5    authorities.

6        Q   Got it.  So on this report we see in the first

7    box the date is 2/03/16.  Do you see that?

8        A   Yes.

9        Q   Is that consistent with the log upstairs at the

10   top of the form there where it also says 2/03/16?

11       A   Yes.

12       Q   So I wanted to ask you a question because of

13   that.  This refers to an incident that happened on 2/02.

14       A   Uh-huh.

15       Q   But Miss Cooper indicated that she was doing

16   the report the next day on 2/03.

17       A   Right.

18       Q   And the log box up at the top also says 2/03.

19       A   Right.

20       Q   So is this sort of changing our understanding

21   or your understanding as to what the log date means?

22   Does that actually mean when the form is entered into

23   the system?

24       A   No.  To my recollection, the top part up there

25   where it says log number should be the date of the

81

Hannah Kaufman & Associates, Inc.

1          I do hereby certify that the witness in the

2    foregoing deposition was by me duly sworn to testify the

3    truth, the whole truth, and nothing but the truth in the

4    within-entitled cause; that said deposition was taken at

5    the time and place therein stated; that the testimony of

6    the said witness was reported by me, a Certified

7    Shorthand Reporter and a disinterested person, and was

8    under my supervision thereafter transcribed into

9    typewriting; that thereafter, the witness was given an

10   opportunity to read and correct the deposition

11   transcript, and to subscribe the same; that if unsigned

12   by the witness, the signature has been waived in

13   accordance with stipulation between counsel for the

14   respective parties.

15          And I further certify that I am not of counsel or

16   attorney for either or any of the parties to said

17   deposition, nor in any way interested in the outcome of

18   the cause named in said caption.

19          IN WITNESS WHEREOF, I have hereunto set my hand

20   the 12th day of October, 2017.

21

22   _____

     JESSICA AYRES

23   CSR No. 14180

24

25

104

Deposition of Juana Nunley

 Save Form As...    Print Form

LOG #: SEN-CIR-020216-P-D-01

 community housing partnership

# Critical Incident Report Form

| HOW TO USE THIS FORM |
| --- |

CHP Employees **must** complete this form immediately following incidents occurring at CHP sites. **The CIR is used to document an urgent or emergency situation for current medical or other life threatening issues, current psychiatric issues, emergency facility issue, urgent facility issue and/or external interactions. The presence of an emergency responder always requires a CIR to be completed.** (Refer to the CHP Critical Incident Response Procedure for details on responding to such situations.) If information is unknown or unavailable, please leave that line blank. Involved parties may be asked to provide further details or clarification. The completed form must be filed at the site and copies **must** be submitted to PM and SSD.

## 1. CONTACT INFORMATION – of CHP employee completing this form

| Employee full name: Xasha Washington | Date: 02/02/2016 |
| --- | --- |
| Employee position/title: Desk Clerk | Work location: Senator |

Staff involvement in incident: ☒ Witness  ☐ Victim  ☐ Actively intervened  ☐ Reporter  ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received  ☐ Medical care waived  ☐ Left work  ☐ Other (explain):

Called Property Manager at 12:30  ☐ am  ☒ pm  ☒ Reached/contacted  ☐ Left voicemail  ☐ Returned call

Called next level manager at _____  ☒ am  ☐ pm  ☐ Reached/contacted  ☐ Left voicemail  ☐ Returned call

## 2. INCIDENT SUMMARY – provide as much information as possible, if unknown write "Don't Know"

| Incident date: 02/02/2016 | Day: ☐Su ☐M ☒Tu ☐W ☐Th ☐F ☐Sa | Time: 12:30  ☐am ☒pm |
| --- | --- | --- |
| Building name: Senator | Location: Next Door Parking lot | Address: 519 Ellis Street  San Francisco, CA 94109 |

Departments involved: ☒ PM  ☐ SSD  ☐ CORE  ☐ SSF  ☐ Admin

Please indicate the incident type(s) – more than one may apply, so review carefully and check ALL that apply.

| | | |
| --- | --- | --- |
| ☒ Assault or attempted assault | ☐ Evacuation (partial or entire) | ☐ Personal property theft |
| ☐ Burglary (break and enter) | ☐ External interaction | ☐ Trespassing/security breach |
| ☐ Confidentiality breach | ☐ Fire/flood/water damage/gas leak | ☐ Violence/criminal threat |
| ☐ CPS/APS evaluation | ☐ Hospitalization | ☐ Other building issue: |
| ☐ Death/fatality | ☐ Injury/illness | ☐ Other criminal issue: |
| ☐ Emergency responder on-site | ☐ Mental health crisis ("5150") | ☐ Other medical/psychiatric: |

Authorities contacted? ☒ Yes ☐ No | Authorities responded: ☒ Police ☐ Fire ☐ Paramedics ☐ Other:

Authority response: ☐ Arrest made ☐ Ambulance transport ☐ Fire extinguished ☒ Other (list): Police made attempt to arrest but let him go.

Police report filed? ☐ Yes ☒ No | Responding officer name: Did not receive this information

| Police report #: unable to get this information. | Officer badge #: | Station: |
| --- | --- | --- |

### ALSO COMPLETE ALL PAGES

Updated December 2015



Δ π EXHIBIT E
J. Nunley
Deponent
10/02/17   Rptr
Date
WWW.DEPOBOOK.COM

000063

LOG #: SEN-CIR-020216-P-D-01


community
housing
partnership

| 3. INCIDENT NARRATIVE -- describe what happened, including specific details |
|---|

I was standing outside on a smoke break , i saw Glenn, we started talking and then immediately the police came to us with guns drawed and told us to get down on the ground. before i could even get on the ground, they kicked glenn down to the ground and started stomping him on his back. i repeatedly told them he didnt have a gun he was unarmed and they pushed me to the side kicking my knee cap an told me to stand back. I stepped back and came in the building and told Stephanie and she went outside. At this time I went back behind the desk because PM handled the situation.

| 4. INVOLVED PARTIES -- provide information for all involved parties (attached additional pages if needed) |
|---|

| Full name: **Glenn Berry** | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____)  ☐ Guest (ID #_____)  ☒ Employee  ☐ Other:

Involvement: ☐ Witness  ☒ Victim  ☐ Suspect  ☐ Responded  ☐ Other (explain):

Impact(s) of Incident: ☐ Medical care received  ☒ Medical care waived  ☐ Arrested  ☐ Other (explain):

000064

LOG #: SEN-CIR-020216-P-D-01


community housing partnership

| Full name: Xasha Washington | Phone: (415) 829-6173 |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest of (unit #_____) ☒ Employee ☐ Other:

Involvement: ☒ Witness ☒ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: Stephanie Cooper | Phone: (925) 329-8394 |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☒ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☒ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

| Full name: | Phone: |
|---|---|

Relationship to CHP: ☐ Tenant (unit #_____) ☐ Guest (ID #_____) ☐ Employee ☐ Other:

Involvement: ☐ Witness ☐ Victim ☐ Suspect ☐ Responded ☐ Other (explain):

Impact(s) of incident: ☐ Medical care received ☐ Medical care waived ☐ Arrested ☐ Other (explain):

## 6. CERTIFICATIONS – initial, date, and email, submit online, and make copies

I have notified: ☒ My supervisor (required) ☐ Other:

By initialing below, I certify that I have provided accurate and complete information regarding this incident and involved parties.

| Employee initials: X.W | Date: 02/02/2016 |
|---|---|

### *** SUBMIT COMPLETED FORM TO PROPERTY MANAGER AND SSD ***

*3 of 3*

*Updated December 2015*

Save Form As...  Print Form

000065